**CORPUS CHRISTI BANK & TRUST et al., Appellants,**

v.

**William R. CROSS, David R. Baker and Lawrence Kieschnick d/b/a Cross, Baker & Kieschnick, Appellee.**

No. 1390.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1979.

Rehearing Denied Sept. 21, 1979.

Charles R. Cunningham, Corpus Christi, for appellants.

Scott T. Cook, Larry G. Hyden, Harris, Cook, Browning & Barker, Inc., Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is an appeal from a judgment awarding plaintiff damages and attorney's fees in its suit for accountant's fees against the defendant bank in its individual capacity for services furnished the estate of a decedent while the defendant was temporary administrator of the estate. We affirm.

The present controversy arose out of the performance by William R. Cross, David R. Baker and Lawrence Kieschnick d/b/a Cross, Baker & Kieschnick (hereinafter referred to as "plaintiff") of certain accounting services for Corpus Christi Bank & Trust (hereinafter referred to as the "Bank"), the temporary administrator of the Estate of Mrs. Rose Van Cura Kosar (hereinafter referred to as the "Estate"). As a result of these services, a suit for accountant's fees was brought by plaintiff against the Bank in its individual corporate capacity. Trial was to a jury. Judgment was rendered in favor of plaintiff against the Bank in its individual corporate capacity. The Bank and Darlene Van Cura have appealed.[1]

---

1. Darlene Van Cura was originally included in the plaintiff's suit for accountant's fees as a defendant in her capacity as executrix of the Estate. She was nonsuited, however, before the case ever went to trial. Nevertheless, she is a named appellant before this Court by virtue of the seventh point of error, which alleges error in the trial court's order of nonsuit, as well as the fact that she is technically aggriev-ed by the judgment below in that it awards the bank indemnity against her in her capacity as executrix of the estate. This judgment for indemnity was based upon a prior agreed partial summary judgment which is discussed more fully in the text of the opinion. Mention of it is made here merely to clarify the position of the parties regarding the seventh point of error.

A threshold issue of a procedural nature has been raised by the Bank's seventh point of error. By this point, it is alleged that the trial court committed reversible error in three particulars: 1) in nonsuiting Darlene Van Cura (hereinafter referred to as "Van Cura") as a co-defendant in the plaintiff's suit for accountant's fees; 2) in ordering a separate trial of Van Cura's counterclaim for malpractice; and, 3) in ordering a severance of Van Cura's counterclaim for malpractice. In disposing of this point, we deem it necessary to briefly review the complex procedural history of this case.

The Bank and Van Cura were originally joined as co-defendants in the plaintiff's suit for accountant's fees. The Bank answered plaintiff's petition with a general denial and further brought a cross action for indemnity against Van Cura. The latter answered plaintiff's petition with genral and special denials, and filed a counterclaim for malpractice. Van Cura was then nonsuited by plaintiff, and the trial court ordered that her counterclaim be tried separately from the main action. The record does not reveal that any objections were raised by either of the defendants at that time.

Later, the Bank and Van Cura entered into an agreed partial summary judgment disposing of the Bank's cross action for indemnity against Van Cura. This agreed judgment ordered Van Cura, in her capacity as executrix of the Estate, to indemnify the Bank against any recovery which might be had by plaintiff in its main suit for accountant's fees. At this point, there was a certain merging of interests between the Bank and Van Cura, and the attorney for Van Cura was designated as additional counsel for the Bank. Trial of the main action was conducted before a jury which returned a verdict favorable to plaintiff. After return of the verdict, but before rendition of judgment, plaintiff moved to sever Van Cura's counterclaim. This was done, but not until after judgment had been rendered for plaintiff against the Bank and for the Bank against Van Cura. Hence, the posture of this case, as it stood when the judgment of the trial court was appealed, was that Van Cura had been removed from the law suit except insofar as the final judgment reflected the prior agreement of the parties evidenced by the partial summary judgment of indemnity.

■ We can find no reversible error alleged in the Bank's seventh point of error. The right to take a nonsuit when affirmative relief is not sought by defendant is absolute and cannot be denied by the trial court. *State v. Gary,* 359 S.W.2d 456 (Tex. Sup.1962); *Renfroe v. Johnson,* 142 Tex. 251, 177 S.W.2d 600 (1944); *Brooks v. O'Connor,* 120 Tex. 121, 39 S.W.2d 22 (1931); *Ex Parte Helle,* 477 S.W.2d 379 (Tex.Civ. App.—Corpus Christi 1972, no writ). Where defendant has filed a counterclaim seeking affirmative relief, however, plaintiff shall not be permitted, by a discontinuance of its suit, to prejudice the right of defendant to be heard on such counterclaim. *Spence v. State National Bank of El Paso,* 294 S.W. 618 (Tex.Civ.App.—El Paso 1927) *aff'd,* 5 S.W.2d 754 (Tex.Com.App.1928); *Valdez v. Gill,* 537 S.W.2d 477 (Tex.Civ.App. —San Antonio 1976, writ ref'd n. r. e.). Thus, Van Cura was not prejudiced by the trial court's action in nonsuiting plaintiff's claim against her for accountant's fees. Her claim for malpractice was alive and well at that moment. Coining the Bank's phraseology, Van Cura was not judicially stripped of her right to pursue her counterclaim against plaintiff by virtue of the nonsuit.

■ Prior to Van Cura's nonsuit, her counterclaim for malpractice was compulsory under Rule 97(a), T.R.C.P. See *In Re McCoy,* 373 F.Supp. 180 (W.D.Tex.1974). The nonsuit had the effect of transforming the malpractice claim from a compulsory counterclaim into a separate action for damages. This is because Rule 97(a) does not contemplate a situation where the counter-plaintiff is no longer a party to the main action. See *Valdez v. Gill,* supra; *Astro Sign Company v. Sullivan,* 518 S.W.2d

420, 427 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.); *Robertson v. Estate of Melton,* 306 S.W.2d 811, 813 (Tex. Civ.App.—Beaumont 1957, writ ref'd); *Heights Funeral Home v. McClain,* 288 S.W. 839, 843 (Tex.Civ.App.—Beaumont 1956, no writ).

When the trial court ordered that Van Cura's malpractice claim be tried separately from the plaintiff's action for accountant's fees, Van Cura had the burden at that time to raise any error allegedly resulting from piecemeal litigation. See *Lewis v. Texas Employers' Insurance Association,* 151 Tex. 95, 246 S.W.2d 599 (Tex.Sup.1952). The record does not indicate that any such objection was raised by anyone at that time. Therefore we will not review the trial court's action in ordering separate trials.

■ Regarding the trial court's order severing Van Cura's claim for malpractice from the plaintiff's claim for accountant's fees (See Rule 41, T.R.C.P.), the record indicates that such decision was made by the trial court on March 9, 1978, the date the final judgment was signed. Acknowledging the general rule that severance of compulsory counterclaims usually will constitute an abuse of discretion, *Bohart v. First National Bank in Dallas,* 536 S.W.2d 234 (Tex.Civ.App.—Eastland 1976, writ ref'd n. r. e.); *Ball v. Cooper-Stanley Company, Inc.,* 413 S.W.2d 467 (Tex.Civ.App.—Dallas 1967, no writ); *Ulmer v. Mackey,* 242 S.W.2d 679 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n. r. e.), it has already been noted that Van Cura's claim ceased to be a compulsory counterclaim after the plaintiff's nonsuit as to her. While severance of claims which are not compulsory counterclaims can also, in some circumstances, constitute an abuse of discretion, *Cruz v. Guajardo,* 502 S.W.2d 610 (Tex.Civ.App.—Corpus Christi 1973, no writ), we find that Van Cura has not been prejudiced. Moreover, any waste of judicial economy or prejudice to Van Cura caused by piecemeal litigation was already an accomplished fact when the court finally ordered a severance of the claims. No abuse of discretion has been shown.

Finding no reversible error concerning the nonsuit of Van Cura or the severance of her malpractice claim, we are thus faced with a simple suit for accountant's fees brought by plaintiff against the Bank, the temporary administrator of the Estate, in its individual corporate capacity. The material facts of the case are not really in dispute, at least insofar as they relate to the appeal. The significance of the facts, though, is hotly contested by the parties; therefore, we shall endeavor to relate the events which gave rise to the controversy in as much detail as necessary.

Mrs. Kosar died on April 26, 1974, in Corpus Christi, Texas. Shortly after her death, Richard B. Stone, an attorney who had prepared a will for her in 1971, visited the Bank and advised David Brannon, an officer in its trust department, that the decedent, in the 1971 will, had named the Bank as independent executor. Brannon, acting for the Bank, agreed to attempt to qualify as independent executor, and requested Stone to probate the will. Brannon asked Stone the identity of Mrs. Kosar's accountant. Stone told him that plaintiff had attended to the testatrix's accounting needs before her death. Stone testified that Brannon then indicated an intention of the Bank to retain plaintiff as an accounting firm in connection with its handling of the Estate. Brannon, however, had no personal recollection of any conversation with Stone concerning, specifically, the hiring of an accounting firm. Brannon testified that plaintiff was not retained by the Bank to furnish accounting services for the Estate until after the Bank became temporary administrator thereof. This was disputed by Cross, who testified to a telephone conversation with Brannon that took place about one week after Mrs. Kosar's death, in which, according to Cross, Brannon requested that plaintiff prepare a federal estate tax return for the Estate.

Stone further testified that he was given authority to deal with plaintiff on behalf of

the Bank, and that he personally informed plaintiff that the Bank desired it to perform accounting services in connection with the Estate. This was consistent with Cross's testimony relating to the aforesaid telephone conversation with Brannon about a week after Mrs. Kosar's death.

It soon became apparent to all concerned that the contemplated probate of the 1971 will would not be a simple matter. About the time that Stone filed the 1971 will for probate he was advised that another will (hereinafter referred to as the "second will") also had been offered for probate. A will contest developed, and the Bank was appointed temporary administrator of the Estate on June 18, 1974. It was specially authorized to:

" . . . take possession of the property of the estate, collect all monies and debts due the estate, and pay all debts due by the deceased, after the same are properly verified as the law requires under administration and approved by the court *and to do and perform all such acts as may be necessary for the preservation of the estate* . . . ." (Emphasis supplied).

In furtherance of these duties, the probate court, on June 11, 1974, granted the Bank's request to retain plaintiff to prepare the federal estate tax return, the state inheritance tax return and income tax returns on behalf of both the decedent and the Estate.

The temporary administration lasted into November, 1975, during which time the will contest continued and attempts were made by the opponents of the 1971 will to have the Bank removed as temporary administrator. The will contest was settled on November 5, 1975, and Van Cura qualified as independent executrix of the Estate pursuant to her nomination as such by the appropriate provisions of the second will, which by agreement of all parties and the concurrence of the probate court, was duly admitted to probate as the last will and testament of Mrs. Kosar. Pursuant to the settlement agreement, the Bank delivered all records and assets of the Estate to Van Cura on November 7, 1975. Temporary administration was closed per order of the probate court, which was signed on November 16, 1975. The instant suit was filed by plaintiff on February 18, 1976.

It is undisputed that plaintiff performed accounting services for the Bank in connection with the Estate sometime between the date of Mrs. Kosar's death, and November 7, 1975. Those services included: determining the extent and location of all assets of the Estate; gathering those assets together; preparing a summary of monies received by Mrs. Kosar from her husband's estate during the three years next preceding her death, apparently to determine whether a claim should be brought by the Bank on behalf of the Estate against the husband's estate; assistance in obtaining extension of time for filing the state inheritance tax return; and assistance in responding to discovery launched by opponents of the 1971 will in relation to the ongoing will contest and their attempts to remove the Bank as temporary administrator of the Estate.

Mention has already been made of evidence that plaintiff was hired as early as a week after Kosar's death to prepare the Estate Tax Return. Brannon denied that Stone was ever given authority to retain plaintiff. This was disputed by Stone, who testified that he called upon plaintiff for assistance in preparing the Bank's application for appointment as temporary administrator. Stone also testified that, while no tax returns were prepared by plaintiff before June 18, 1975, the date of the Bank's appointment as temporary administrator, work necessary to the preparation of such returns had commenced shortly after the date of Mrs. Kosar's death. Cross and Baker testified that, *during the weeks immediately following Mrs. Kosar's death, they worked closely with Stone in preparing an inventory of the Estate and the Bank's application for probate of the 1971 will.*

The first statement presented by plaintiff to the Bank for services rendered was dated August 19, 1975. That statement, which was *neither itemized nor verified,* showed a total of $7,800.00 due and owing as compen-

sation for the preparation of the three different tax returns, hereinbefore mentioned. It was addressed to the Estate in care of the Bank in its capacity as temporary administrator thereof. A second such statement was presented to the Bank on or about November 7, 1975. This statement carried over the balance due under the August bill and, in addition, indicated that an additional $1,225.00 was due and owing for services rendered in connection with discovery relating to suits involving the Bank as temporary administrator of the Estate. The monies evidenced by the statements were not paid. In response to special issues, the jury found that the Bank had authorized plaintiff to perform services in connection with the Estate and that plaintiff had performed such services, worth $9,025.00, in a good, accountant-like manner. In addition, the jury awarded attorneys' fees for the prosecution of its suit against the Bank. Judgment was rendered upon the verdict.

There is, in our opinion, abundant evidence to support the jury findings. The question to be resolved, however, is whether those findings will support a judgment against the Bank in its individual capacity.

█ The liability of an estate for professional services rendered to it, whether directly to the person furnishing such services upon a proper claim therefor or to the administrator of the estate upon his account for expenses of administration, is limited to such services as are necessary, and to such amount of fees as is reasonable. However, the necessity for the services and the reasonableness of the fees are questions to be determined by the probate court, and not by the administrator. *Jones v. Gilliam,* 109 Tex. 552, 212 S.W. 930 (Tex.Sup.1919).

█ When a personal representative contracts for anything necessary to an administration of the estate he does so as an agent for the estate. As such, he is totally free to contract for necessary services in his representative capacity. *Portis v. Cole,* 11 Tex. 157 (1953); *Hare v. Pendleton,* 214 S.W. 948 (Tex.Civ.App.—Texarkana 1919) *rev'd on other grounds,* 231 S.W. 334 (Tex.

Com.App.1921, jdgmt. adopted). However, unless otherwise stipulated, it is assumed that the personal representative, in contracting with a third party for professional services to the estate, did so in his individual capacity. *McGloin's Ex'rs v. Vanderlip,* 27 Tex. 366 (1864); *Morton's Estate v. Ferguson,* 45 S.W.2d 419 (Tex.Civ.App.—Eastland 1932, writ ref'd). Consequently, in the absence of a stipulation to the contrary, the third party may elect to hold the representative to a personal liability. *Morton's Estate v. Ferguson,* supra; *McGloin's Ex'rs v. Vanderlip,* supra; *Kitchens v. Culhane,* 398 S.W.2d 165 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.). In such a case, the representative has a right of reimbursement against the estate to the extent that the third party's services were necessary and his fees were reasonable. The possibility that a representative of an estate may be held personally to a greater liability than can be chargeable to the estate may be avoided by a proper stipulation in the contract for the furnishing of professional services. *Morton's Estate v. Ferguson,* supra.

The Bank relies upon *United States v. Swan,* 441 F.2d 1080 (5th Cir. 1975) and two Texas authorities cited therein, *Portis v. Cole,* 11 Tex. 157 (1853) and *Hare v. Pendleton,* 214 S.W. 948 (Tex.Civ.App.—Texarkana 1920) *rev'd on other grounds,* 231 S.W. 334 (Tex.Com.App.1921, jdgmt. adopted) for the proposition that a personal representative cannot be held to a personal liability for necessary services rendered to the estate. We disagree. The Texas cases cited merely stand for the rule that the personal representative may elect to contract solely in his representative capacity. Moreover, the authorities relied upon by the Bank merely acknowledge the fact that ultimately the estate is liable for all reasonable and necessary services. *See Brandenburg v. Dante,* 49 App.D.C. 141, 261 F. 1021, 1022–23 (D.C.Cir. 1919).

Even if the cases relied upon by the Bank actually hold that a personal representative cannot be held liable in his individual capacity, in doing so it does not correctly state the current law in this State. The court in

*Morton's Estate,* supra, unequivocally held that, absent a stipulation in the contract, a third party could elect to hold the personal representative to a personal liability for professional services rendered to the Estate. The Supreme Court unqualifiedly refused a writ of error in the case. When it refused the writ, the Court had before it both cases subsequently relied upon by the Fifth Circuit Court in *Swan.* Hence, only two inferences may be drawn from the Supreme Court's refusal of the writ of error, both of which support our position that a personal representative, unless he stipulates otherwise, may be held liable in his individual capacity for the value of services rendered. First, by refusing a writ in *Morton's Estate,* the Supreme Court could have reasoned that *Portis* and *Pendleton* did not go as far as *Swan* later held. Second, by refusing the writ, the Court could have disapproved of language in either the *Portis* or *Pendleton* case tending to exclude a personal representative from individual liability. Regardless of our Supreme Court's reasoning, however, we are bound by its refusal of a writ of error in *Morton's Estate.*

The Bank's reliance upon *El Paso National Bank v. Leeper,* 538 S.W.2d 803 (Tex.Civ. App.—El Paso 1976, writ ref'd n. r. e.) is misplaced because that case dealt solely with a suit brought against a temporary administrator in his representative capacity. The case at bar involves a suit brought against a past temporary administrator in its individual capacity.

In the case at bar, it was conclusively shown that the Bank had a right to offer the 1971 will (wherein it was named as independent executor) for probate. It had a duty to oppose the probate of the second will, and after its appointment as temporary administrator, was required to timely attend to all matters, including tax matters, which affected the Estate. It was undisputed that there were no stipulations in plaintiff's contract that required it to look solely to the Estate for compensation for services furnished, which in effect, were held by the trial court to be reasonable compensation for necessary professional services to the Estate. Furthermore, the contract originated with the Bank. The plaintiff, under the undisputed facts of this case, could elect to hold the Bank personally responsible for payment of fees due for professional services rendered to the Estate.

Application of the aforesaid rules to the facts of this case does not work an injustice or hardship on the Bank since it was fully indemnified by Van Cura against any recovery which might be awarded plaintiff. Moreover, the Bank had an independent right of reimbursement against the Estate provided the services were necessary and the fees were reasonable. To that extent, the Estate likewise has not been subjected to any injustice, since it was the beneficiary of the services. Finally, the Bank was free to shield itself from individual liability by merely stipulating to that effect in its contract with plaintiff.

We do not reach the question of the extent to which a designated executor can bind the estate for services rendered at his request before probate of the will where such probate ultimately fails. Our holding that the Bank can be held to an individual liability does not necessitate any extended discussion of this point.

We have carefully considered all of appellants' points of error. They are all overruled. We find no reversible error in the judgment of the trial court.

AFFIRMED.