**JACK H. BROWN & COMPANY, INC., Appellant,**

v.

**NORTHWEST SIGN COMPANY, INC., Appellee.**

**No. 05–85–01052–CV.**

Court of Appeals of Texas, Dallas.

Aug. 29, 1986.

Rehearing Denied Oct. 8, 1986.

Steven E. Clark, John D. Rosenberg, Lisa A. Peterson, Dallas, for appellant.

Bertran T. Bader, III, Dallas, for appellee.

Before GUITTARD, C.J., and HOWELL and STEWART, JJ.

GUITTARD, Chief Justice.

The question on this appeal is whether the present suit is barred by a prior default judgment and the compulsory counterclaim rule embodied in rule 97(a) of the Texas Rules of Civil Procedure. The present suit was brought by "Signgraphics," an assumed name of Jack H. Brown & Company, Inc., a Texas corporation, against North-

west Sign Company, an Idaho corporation, for the price of steel pipe furnished for the erection of a Holiday Inn sign in Idaho. Northwest filed a special appearance challenging the personal jurisdiction of the Texas court. Northwest also filed a motion for summary judgment asserting that Signgraphics's claim in the present suit is barred by the failure of Signgraphics to present it as a counterclaim in an Idaho suit by Northwest against Signgraphics on a contract for erection of the sign. Although the trial court overruled Northwest's special appearance, it awarded a summary judgment to Northwest based upon the compulsory counterclaim rule and also upon the ground of res judicata. Since we agree that the compulsory counterclaim rule applies, we affirm the summary judgment without reaching the res judicata question. Also, we do not reach Northwest's cross-point complaining of the court's overruling its special appearance because it is presented only in the alternative.

The summary judgment proof discloses the following facts. Signgraphics made a written contract with Weston, the operator of a Holiday Inn in Idaho, to fabricate and install a Holiday Inn sign on supporting steel pipe to be provided by Weston. Signgraphics then made a written subcontract with Northwest for installation of the sign. In accordance with the subcontract, Signgraphics made the sign, but Weston had difficulty obtaining the steel pipe. Northwest then asked Signgraphics to supply the pipe. Signgraphics obtained the pipe, shipped it along with the sign to Northwest, and billed Northwest for the pipe. Northwest erected the pipe and installed the sign. Signgraphics refused to pay for the installation, and Northwest refused to pay for the pipe.

In the earlier suit, Northwest sued Signgraphics in Idaho and obtained a default judgment. Northwest brought the Idaho judgment to Texas, obtained an order giving the judgment full faith and credit, and garnished Signgraphics's bank account. *See Northwest Sign Co. v. Jack H. Brown & Co.,* 680 S.W.2d 808 (Tex.1984), *cert. denied,* 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985). Signgraphics then brought the present suit in Texas for the price of the pipe.

Signgraphics contends that its claim was not a compulsory counterclaim in the Idaho suit because the sale of the pipe was an oral transaction subsequent to and separate from the written subcontract for installation of the sign, on which Northwest brought its suit in Idaho. Since the law of Idaho has not been proved or cited, we assume it is the same as the law of Texas, and apply rule 97(a) of the Texas Rules of Civil Procedure. This rule requires a pleading to assert as a counterclaim any claim against the opposing party "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...."

Decisions under this rule throw little light on the problem of determining what is "the transaction or occurrence that is the subject matter of the opposing party's claim." The only pertinent decision of the Supreme Court of Texas is *Griffin v. Holiday Inns of America,* 496 S.W.2d 535, 539 (Tex.1973), which indicates that the compulsory counterclaim rule is broader than the rule of res judicata. There the plaintiff had filed a previous suit for the balance claimed on a contract to pave a parking lot and the defendant had counterclaimed for breach of the same contract. Recovery was denied to both parties in the first suit. In the second suit, the plaintiff sued for the same work in quantum meruit. The supreme court held that the quantum meruit claim was not barred by res judicata because it was considered a "different cause of action," but it was barred by rule 97(a) because it arose out of the same transaction—the paving of the parking lot—that was the subject matter of the defendant's counterclaim for damages in the first suit.

Other Texas courts have given rule 97(a) a similarly broad interpretation. The rule has been held to apply in the following cases. *Bailey v. Travis,* 622 S.W.2d 143, 144 (Tex.Civ.App.—Eastland 1981, writ

ref'd n.r.e.), held that a legal malpractice claim was barred by failure to assert it in a previous suit for attorney's fees. *Corpus Christi Bank & Trust v. Cross*, 586 S.W.2d 664, 666–67 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.), held similarly in a suit against an accountant. *Upjohn Co. v. Petro Chemicals Suppliers, Inc.*, 537 S.W.2d 337, 340 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.), held that a seller's claim for unpaid invoices was a compulsory counterclaim in a suit against the seller for fraud in bribing the buyer's agent. *Burris v. Kurtz*, 462 S.W.2d 347, 348 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.), held that a suit for alleged impropriety in handling a retail installment contract was barred by failure to assert the claim in a previous suit against the plaintiff on the contract. *Powell v. Short*, 308 S.W.2d 532, 534 (Tex.Civ.App.—Amarillo 1958, no writ), held that a claim of malicious prosecution for giving a worthless check was a compulsory counterclaim in a suit by the payee to collect on the check. *Connell v. Spivey*, 264 S.W.2d 458, 459 (Tex.Civ.App.—El Paso 1954, no writ), held that a claim for breach of contract for pasturing cattle was a compulsory counterclaim in a suit to recover the balance due on the contract.

On the other hand, rule 97(a) has been held not to bar a later suit in the following cases. *Reliance Universal, Inc. v. Sparks Industrial Services*, 688 S.W.2d 890, 891 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.), held that a claim by the buyer of material for the seller's negligence, after delivery, in directing use of materials was not a compulsory counterclaim in a suit by the seller for the price of the materials. *Astro Sign Co. v. Sullivan*, 518 S.W.2d 420, 426 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.), held that a suit by a former employee for his commissions did not arise out of the same transaction as an earlier suit by the employer for conversion of property by the employee after his discharge. *Gulf States Abrasive Manufacturing, Inc. v. Oertel*, 489 S.W.2d 184, 188 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.), held that claims against a corporation for personal services and con-

version of stock were not compulsory counterclaims in a suit by the corporation for breach of fiduciary duties in setting up a competing corporation.

These cases reveal no consistent test of what is the same "transaction or occurrence." We look, therefore, to the decisions and commentaries interpreting rule 13(a) of the Federal Rules of Civil Procedure, from which Texas Rule 97(a) is taken. The leading case on compulsory counterclaims is *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), in which the Supreme Court construed the former equity rule that preceded federal rule 13. The Court adopted a broad interpretation of the rule, holding that a claim that the plaintiff was purloining quotations from the defendant's exchange was a compulsory counterclaim to the plaintiff's suit alleging that the defendant was violating the antitrust laws by refusing to furnish him ticker service. The Court said that "transaction" has a flexible meaning that "may comprehend a series of many occurrences, depending not so much upon the immediateness of their occurrence as upon their logical relationship." *Moore*, 270 U.S. at 610, 46 S.Ct. at 371.

Professor Charles Alan Wright has written that this "logical relationship" test is the only satisfactory method of determining whether a counterclaim is compulsory. He analyzes and discards other suggested tests, including whether substantially the same evidence will support or refute both the plaintiff's claim and the counterclaim, whether the issues of fact and law are largely the same, and whether res judicata would bar the subsequent suit in the absence of a compulsory counterclaim rule. Wright, *Estoppel by Rule: The Compulsory Counterclaim Under Modern Pleading*, 39 Iowa L.Rev. 255, 270–73 (1954); C. Wright, FEDERAL COURTS § 79, at 527–29 (4th ed. 1983). Professor Wright points out that if a counterclaim would be compulsory under any of these three tests it would be so likewise under the "logical relationship" test, but that the converse is not true because some claims that come

within the purpose of the compulsory counterclaim rule would not be complusory under these other tests. 39 Iowa L.Rev. at 271, 272. Professor Wright suggests that the purpose of compelling counterclaims is to reduce the volume of litigation and promote the just, speedy, and inexpensive determination of controversies by barring relitigation of the same sets of facts. 39 Iowa L.Rev. at 263. Thus, we conclude that application of the rule requires that both claims concern at least some of the same facts. *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1360–61 (5th Cir.1979).

■ We recognize that the "logical relationship" test does not provide an easy solution in every case, although it does give a broader scope to the rule than any of the other tests. There is no logical relationship when none of the same facts are relevant to both claims. However, whenever the same facts, which may or may not be disputed, are significant and logically relevant to both claims, the "logical relationship" test is satisfied. This test is consistent with the decision of the Supreme Court of Texas in *Griffin,* as well as most, if not all, of the other Texas decisions cited.

■ In the present case we conclude that the "logical relationship" test is satisfied. Signgraphics's contract with Weston to fabricate and install the sign was the basic transaction out of which arose both the subcontract on which Northwest sued in Idaho and the later oral contract on which Signgraphics sued in the present suit. Performance of both of these contracts was necessary to enable Signgraphics to perform its contract with Weston. Moreover, performance by Signgraphics of its contract to furnish the pipe was necessary to enable Northwest to perform its subcontract with Signgraphics. Evidence of both of the earlier contracts is relevant to the present suit. Thus, although three distinct contracts are involved, there is a logical relationship between them. We hold that Signgraphics's claim arose out of the transaction or occurrence that was the subject

of Northwest's claim, and, therefore, that the present suit is barred by Rule 97(a).

■ Signgraphics contends further that its claim should not be barred because the Idaho judgment was based on a default after service on Signgraphics of a nonresident notice that this Court held to be insufficient in *Northwest Sign Co. v. Jack H. Brown & Co.,* 677 S.W.2d 135 (Tex.Civ. App.—Dallas 1984), *rev'd,* 680 S.W.2d 808 (Tex.1984). However, the sufficiency of the service and the jurisdiction of the Idaho court were upheld by the Supreme Court of Texas in *Northwest Sign Co. v. Jack H. Brown & Co.,* 680 S.W.2d 808 (Tex.1984), *cert. denied,* 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985). Signgraphics cites no authority supporting the view that the compulsory counterclaim rule does not apply to a default judgment. Nothing in rule 97(a) indicates that it does not apply to default judgment cases. The rule has been applied to cases where the former defendant did not file an answer because his insurer made a settlement with the plaintiff. *Harris v. Jones,* 404 S.W.2d 349, 351–52 (Tex.Civ.App.—Eastland 1966, writ ref'd); *Fireman's Ins. Co. v. L.P. Stewart & Bros.,* 158 A.2d 675, 677 (D.C.1960). We conclude that a party has no right to let an adverse claim go by default and reserve his counterclaim for a time and place of his own choice. The same policy reasons apply as if he had appeared and defended the opposing claim. Consequently, we hold that Signgraphic's present claim is barred by its failure to present its present claim as a counterclaim in the Idaho suit.

Accordingly, we overrule Signgraphics's points of error. Northwest's cross-point complaining of the trial court's overruling of its special appearance is presented only in the alternative. Consequently, we do not reach the cross-point.

Affirmed.

HOWELL, J., dissenting with opinion.

HOWELL, Justice, dissenting.

I dissent. In stating that a party "has no right" to default his opponent's action

and thereafter litigate his counterclaim at "a time and place of his own choice," the majority infers that the Idaho default was a conscious and deliberate strategic manuever of Signgraphics, the Texas signmaker. The trial court made no such finding, the Idaho signmaker makes no such claim, and the record does not warrant this court to so hold *sua sponte.*

Likewise, the majority holds by inference that the failure of the Texas signmaker to cite authority "supporting the rule that the compulsory counterclaim rule does not apply to a default judgment" is a sufficient ground for an affirmance. The decision harkens back to the medieval rule that if there be no writ, there be no right. Where the law upon a point has not been decided, it is our obligation to declare the law, not to simply affirm because the appellant has no case directly in point.

Sound legal analysis leads to the conclusion that neither the compulsory counterclaim rule, nor any theory of res judicata should be applied to default judgment situations. The courts of our nation enter a myriad of defaults against the impecunious. The most frequent reason, by far, that a defaulting defendant fails to meet his underlying obligation is that he has no money; the reason that he defaults is that he has neither a defense, nor funds to retain counsel to present a defense. That class of default is easily distinguishable and is of little present concern because, once a default of that class is entered, it is rarely contested and, more often than not, the plaintiff ultimately realizes little or nothing upon his judgment.

The class of default which is subsequently contested almost always involves mistake, oversight, misunderstanding, and other human failing. In the majority of instances, the failing which leads to the default is not the personal failing of the defaulting defendant but is the failing of the defendant's agent, generally a member of the bar certified as competent to protect the rights of the public by the very court system which has exacted the default.

Defaults are necessarily punitive. In every instance, they represent the forfeiture of the right to present evidence and to be heard as to the merits of the opposing party's claim. Of course, every system for the regulation of human conduct must have its sanctions; experience demonstrates that without *reasonable* sanctions and the *reasonable* application thereof, our judicial system would collapse. This case squarely presents the question of what is a reasonable sanction for the Texas signmaker's Idaho default. Regrettably the majority has avoided rather than answered the core question presented by this record.

The question, having been properly outlined and placed in its proper context is easily answered: The compulsory counterclaim rule is not applicable to default judgments. Neither should a default judgment be granted res judicata effect over and beyond the actual res awarded to the plaintiff who prevails upon default.

The law has long recognized the harsh and punitive effect of defaults. Upon default, the plaintiff may not amend; he may not make additional claims, not unless he serves those claims upon the defaulting defendant and obtains subsequent default thereon; he may not recover more than that for which he has sued; he may not state additional grounds for recovery; and if his evidence will not support all relief granted, the default will not as a rule be modified—it will be set aside in its entirety.

These rules have been fashioned by the courts to ameliorate the punitive effect of defaults. The within majority decision violates them. The Idaho signmaker is being given relief that it did not plead; relief to a dollar value in excess of the defaulted Idaho petition is being awarded; relief different in kind is being granted; relief not supported by evidence received at the default hearing is being assessed. The well established law of Texas pertaining to defaults has been traversed *sub silentio.*

The only theoretical justification advanced by the majority is that which it has gleaned from Professor Wright's statement that the law of compulsory counterclaim reduces the volume of litigation and pro-

motes "the *just,* speedy and inexpensive determination of controversies.... (emphasis added)." Texas has long held that it is not "just" to assess against a defaulting defendant anything over and beyond that which was precisely claimed and precisely put in evidence in the case wherein the default occurred. Professor Wright's analysis, while persuasive as a general proposition, must yield to the Texas concept of proper sanctions against a defaulting defendant. It is to be further noted that the Professor's stated goal of an inexpensive determination is largely inapplicable to defaults. Default hearings are short and summary proceedings; defaults are often granted upon the pleadings or upon affidavit. To exempt defaults from the compulsory counterclaim rule and from the rule of res judicata still only requires but one full blown trial upon the merits. The judgment below should be reversed.

Finally, the majority has neither reached nor ruled upon the Idaho signmaker's conditional cross-point urging that its special appearance was improperly overruled. The cross-point should be sustained and this action should be dismissed. *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977).