**SMS MARKETING & TELECOMMU-NICATIONS, INC., Plaintiff,**

v.

**H.G. TELECOM, INC., Linq Telecom, Inc., Travis Hamer and Ralph Senter, Defendants.**

**No. CV–96–4803.**

United States District Court, E.D. New York.

Dec. 10, 1996.

Dean J. Lakis, Port Washington, NY, for plaintiff.

Solomon J. Jaskiel, New York City, for defendants.

### MEMORANDUM AND ORDER

GLASSER, District Judge:

#### SUMMARY

This is an action by plaintiff SMS Marketing & Communications, Inc. ("SMS") against defendants H.G. Telecom, Inc. ("HG"), LINQ Telecom, Inc. ("LINQ"), Travis Hamer ("Hamer") and Ralph Senter ("Senter") for

1. All citations to the complaint herein refer to the Proposed Amended Complaint submitted by SMS

breach of contract, fraud, unjust enrichment and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* Defendants move to dismiss the complaint under the doctrine of res judicata and pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(2). For the reasons set forth below, the defendants' motion should be granted.

#### BACKGROUND

Plaintiff SMS is a corporation located in Kings Park, New York which offers prepaid telephone calling cards to customers. Defendants HG and LINQ are corporations located in Texas that re-sell long distance telephone communications service. Hamer is the president of HG and LINQ, and Senter is the chief financial officer of LINQ.

On or about June 25, 1995, SMS entered into a contract with HG and LINQ under which it was to receive long distance telephone service for the calling cards it sold to customers. Compl. ¶ 10.[1] That service was enjoyed for a time, but, at some point, purchasers of SMS's phone cards began experiencing periods during which the calling cards were rendered useless. Compl. ¶ 17. According to the complaint, Hamer and Senter attributed this "down time" to technical errors when, in fact, it was caused by the failure of the defendants to remit payments to AT & T, the company from which it purchased the phone time that was resold to SMS. *Id.*

On or about April 24, 1996, all of the long distance telephone lines which SMS had purchased from the defendants and sold to its customers via its pre-paid calling cards were terminated. Compl. ¶ 19. The defendants maintain that they terminated the long distance service due to SMS's failure to pay outstanding charges. Affirmation of Travis Hamer, dated October 21, 1996, (hereinafter "Hamer Aff. I") ¶ 2.

On July 26, 1996, LINQ sued SMS in the District Court of Tarrant County, Texas, 96th Judicial District, to recover the outstanding service charges (the "Texas ac-

together with its papers opposing the motion to dismiss.

tion"). Hamer Aff. I, ¶ 3. SMS neither answered nor defended the suit and, on September 6, 1996, LINQ obtained a default judgment against it in the amount of $73,363.78, plus interest and legal fees. *Id.*

Subsequent to the filing of the Texas action, but prior to entry of the default judgment therein, SMS commenced the action now before this Court in the Supreme Court of the State of New York. The defendants removed the case to this Court on September 30, 1996 pursuant to 28 U.S.C. §§ 1441(a) and 1332(a)(1). Jurisdiction is based upon diversity of citizenship.

The defendants now move to dismiss on the grounds that (1) SMS's causes of action in this suit were compulsory counterclaims in the Texas action and are therefore barred under the doctrine of res judicata, (2) the complaint fails to state a claim upon which relief can be granted, and (3) this Court lacks personal jurisdiction over Hamer and Senter.

## DISCUSSION

### I. Introduction

The commercial relationships between and among the parties to this litigation are not addressed by either side in any detail. The contract at issue, annexed to the Affidavit of SMS's president Vincent Annunziata, dated November 11, 1996 (hereinafter "Annunziata Aff."), appears to be between HG and SMS, but LINQ was the party that sued SMS on the contract in Texas. Neither party's submissions make any factual distinction between defendants LINQ and HG and the two are often referred to interchangeably. For example, the complaint alleges that "plaintiff and defendants HG and LINQ entered into a contract ... whereby H.G. & [sic] LINQ agreed to provide ...". Compl. ¶ 10. The next paragraph provides that "the long distance carrier from whom the defendant's [sic] purchased phone time ... was AT & T." Compl. ¶ 11. Because the parties treat HG and LINQ as being one and the same, or at least as being in privity with each other, so does the Court for purposes of the res judicata discussion that follows. In addition, because a judgment in an action to which a corporation is a party does not in general redound to the benefit of its management or

shareholders (except insofar as it affects the corporation itself), *see Restatement of Judgments 2d.,* § 59, the status of Hamer and Senter is addressed separately in section III below.

## II. The Res Judicata Effect of the Texas Action on HG and LINQ

■ The determination of the res judicata effect of the Texas action must be based upon the law of Texas, the state from which the judgment was obtained. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985). Under Texas law, a court may invoke the doctrine of res judicata to bar consideration of a claim already presented to a Texas court upon finding that: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both suits. *Sutherland v. Cobern,* 843 S.W.2d 127, 130 (Tex.App.—Texarcana 1992, writ denied).

■ In raising the doctrine of res judicata, the defendants assert that SMS's causes of action here were compulsory counterclaims in the Texas action under Tex. R.Civ.P. 97(a). In Texas, the test for determining whether a claim is a compulsory counterclaim is the "logical relationship" test. *Jack H. Brown & Co., Inc. v. Northwest Sign Co.,* 718 S.W.2d 397 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Application of this test requires that at least some of the facts surrounding the causes of action arise from the same transaction or circumstance. *Id.* When the same facts are significant and logically relevant to the various causes of action, the test is satisfied. *Id.* Under Texas law, where a counterclaim is compulsory and has not been asserted in a prior action, a defendant is barred by the doctrine of res judicata from asserting the claim in a later lawsuit. *Williams v. National Mortgage Co.,* 903 S.W.2d 398, 402 (Texas App.—Dallas 1995). This rule applies with equal force to default judgments. *Jack H. Brown & Co.,* 718 S.W.2d at 400 ("a party has no right to let an adverse claim go by default and reserve his

counterclaim for a time and place of his own choice.").

It is indisputable that SMS's causes of action in this case for breach of contract, fraud and unjust enrichment arise from the same transaction as LINQ's claims in the Texas action, namely, the contract for telecommunications service. There is a logical relationship between the suit filed by LINQ for payments due on the contract, and the suit filed by SMS which alleges, in essence, breach of the same contract. Because SMS's causes of action are logically related to LINQ's suit for payments due under the contract, they were compulsory counterclaims which should have been litigated in the Texas action and cannot be raised here. *See Connell v. Spires*, 264 S.W.2d 458, 459 (Texas Civ.App.—Eastland 1954) (breach of contract claim was a compulsory counterclaim to the prior suit to collect balance due under contract); *Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276 (Tex.App.—Amarillo 1990, writ denied) (guarantor's fraud claim was compulsory counterclaim to vendor's prior action on guarantee); *Republic Telcom Corp. v. Telemetrics Communications, Inc.*, 634 F.Supp. 767 (D.Minn.1986) (buyer's action for fraud in connection with contract appeared to be compulsory counterclaim to seller's action for breach under Fed.R.Civ.P. 13(a) from which Texas compulsory counterclaim rule was taken).

Indeed, SMS does not question that the Texas judgment was on the merits, that the parties in both cases are identical and that the causes of action involved are the same. Instead, its arguments are aimed at the jurisdiction of the Texas court.

■ SMS's first argument is that LINQ failed to comply with the strict pleading allegations necessary where, as here, service on a nonresident through the Texas Secretary of State is to be employed under § 3 of Article 2031b of Tex.Rev.Stat.Ann. (repealed and codified in § 17.044(b)). Under Texas case law, when service is to be made on a nonresident through the Secretary under that statute, the plaintiff's petition must explicitly state that the defendant "does not maintain a place of regular business" in Texas and that there is no "designated agent [in Texas] upon

whom service may be made." *Public Storage Properties, VII, Ltd. v. Rankin*, 678 S.W.2d 590, 593 (Tex.App.—Houston [14th Dist.] 1984). LINQ's petition in the Texas action omitted to state explicitly that SMS did not maintain a place of business in Texas. It alleged, in pertinent part:

> 2. Defendant SMS Marketing & Communications, Inc. is a foreign corporation with its principal place of business at 7A Main Street, Kings Park, New York 11754. Defendant has engaged in business in the State of Texas and this proceeding arises from such business. Defendant has not designated or maintained a resident agent in Texas for service of process. Defendant may therefore be served by substituted service on the Secretary of State.

Hamer Aff. I, Ex. A.

■ Even assuming that LINQ's pleadings were insufficient to authorize assumption of personal jurisdiction over SMS by service on the Secretary, a collateral attack on the default judgment cannot be maintained on this ground. It is well-settled in Texas law that:

> [t]he effect of an unauthorized exercise of jurisdictional power varies, depending on its demonstrability and the manner in which the judgment is attacked. If a court having potential jurisdiction renders a judgment when the potential jurisdiction has not been activated, and the defect is apparent from the face of the judgment, then the judgment is void and subject to either direct or collateral attack. *If, however, the court having potential jurisdiction renders a judgment regular on its face that contains recitations stating that potential jurisdiction has been activated, then the judgment is voidable, not void, and may be set aside only on direct attack.* The latter result is because a court of potential jurisdiction has the power to determine whether its jurisdiction has been activated, and the recitations making that determination are immune from attack in a collateral proceeding.

*Graham v. Graham*, 733 S.W.2d 374, 377 (Tex.App.—Amarillo 1987, writ ref'd n.r.e.)

(Emphasis added, citations omitted).[2] Similarly, in *Waldron v. Waldron*, 614 S.W.2d 648 (Tex.Civ.App.—Amarillo 1981), the court held that a judgment regular on its face which contained recitations of due service was not void and not subject to collateral attack. In *Bynum v. Davis*, 327 S.W.2d 673 (Tex.Civ.App.—Houston 1959), a default judgment's recital that the defendant was "duly served with process [and] failed to answer in this behalf but wholly made default," was held immune from collateral attack. *See also, Steph v. Scott*, 840 F.2d 267, 270 (5th Cir.1988) (a federal court may not void a state court judgment on collateral attack for a jurisdictional defect unless defect appears on face of judgment; jurisdictional recitals on face of judgment bind the district court.); *A.L.T. Corp. v. Small Business Administration*, 801 F.2d 1451, 1457 (5th Cir. 1986) ("It is the settled rule of [Texas] that where a judgment is collaterally attacked, plain jurisdictional recitals contained therein must be accorded absolute verity.").

The judgment in the Texas action recites that, "[SMS], although duly and legally cited to appear and answer, failed to appear and answer and wholly made default." Hamer Aff. I, Ex. B. Such a recitation renders the default judgment, regular on its face, immune from collateral attack.

■ SMS next argues that the default judgment should not have preclusive effect here because the Texas court did not have personal jurisdiction over it under the Texas long-arm statute and federal constitutional standards. A Texas court may exercise personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990).

■ The Texas long-arm statute authorizes the exercise of jurisdiction over a non-resident "doing business" in Texas. *See* Tex.

Civ.Prac. & Rem.Code § 17.042; *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). The broad language of the long-arm statute's "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Id.* The statute provides in relevant part:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

Tex.Civ.Prac. & Rem.Code § 17.042 (Vernon 1986).

■ The long-arm statute is satisfied here because SMS contracted with a corporation residing in Texas and the contract was to be performed in part in Texas. *See* Annunziata Aff., Ex. A: "[HG] will provide customer support from its location at 933 West Weatherford, [Fort Worth, Texas]"; "[t]his agreement shall be governed and construed in accordance with the laws of the state of Texas applicable to agreements made and to be performed entirely within such state."

■ Under the federal constitutional test of due process, a plaintiff must overcome two hurdles to justify the exercise of jurisdiction over a non-resident defendant. The plaintiff must show that the defendant has established minimum contacts with the forum state, and that the assertion of jurisdiction comports with fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In an effort to ensure compliance with the federal standard, Texas has designed its own jurisdictional formula which provides for jurisdiction where the following criteria are met:

1) The nonresident defendant or foreign corporation must purposefully do some act

---

**2.** As was explained in *Southern Surety Co. v. Texas Oil Clearing House*, 281 S.W. 1045, 1046 (Tex.Comm.App.1926): "A void judgment is one which has no legal force or effect whatever.... Usually it carries the evidence of its invalidity upon its face ... [A] voidable judgment is one

apparently valid, but in truth wanting in some material respect; ... Such vice may be the want of jurisdiction over the person ... but which vice does not affirmatively appear upon the face of the judgment."

or consummate some transaction in the forum state;

2) The cause of action must arise from, or be connected with, such act or transaction. If the cause of action does not arise from a specific contact, jurisdiction may be exercised if defendant's contacts with Texas are continuous and systematic; and

3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play or substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966), modified in *Schlobohm v. Schapiro*, 784 S.W.2d at 358.

■■■ It is clear that SMS purposefully directed its activities into Texas so as to satisfy the first part of the Texas test. SMS had continuous contact and communication with HG and LINQ, Texas companies, during the contract negotiations. After negotiation, SMS purposefully entered into a contract with the Texas companies. The contract stated on its face that it would "be governed and construed in accordance with the laws of the state of Texas applicable to agreements made and to be performed entirely within such state." Annunziata Aff., Ex.A. The contract further provided that "each party hereby agrees to submit to binding arbitration in a U.S. Court of Law in Texas" in the event of an "arbitration proceeding." *Id.* SMS agreed under the contract to have HG provide service and customer support for its customers calling cards from Fort Worth, Texas. It sent its initial payment and subsequent service payments to HG and LINQ in Texas. Each call by an SMS customer was routed through computers located in Texas. Finally, SMS maintained regular communications with HG and LINQ personnel in Texas concerning operation of the calling cards. Given these contacts, SMS could reasonably have assumed that it would be made to answer in a Texas court in the event of a dispute.

The second part of the Texas test is met because "specific jurisdiction" pertains here. It is plain that LINQ's Texas cause of action arose from its contract with SMS. *See Billingsley Parts and Equipment, Inc. v. Vose*, 881 S.W.2d 165, 170 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (collecting specific jurisdiction cases).

In considering the third part of the Texas jurisdictional formula, the Court finds nothing to suggest that traditional notions of fair play or substantial justice would be offended if SMS had been subjected to jurisdiction in a Texas court, especially since it reached into Texas to obtain long distance phone service, and in doing so expressly agreed to be governed by Texas law. Therefore, the court is satisfied that personal jurisdiction over SMS was proper in the Texas action.

SMS's final argument, that the Tarrant County District Court lacked subject matter jurisdiction when it entered the default, is easily disposed of. The state district courts are the general trial courts of Texas and have jurisdiction of all actions, proceedings, and remedies. *See,* Tex. Const., Art. V, § 8, ("District Court jurisdiction consists of exclusive, appellate and original jurisdiction of all actions, proceedings and remedies"). From this jurisdictional base, the trial court properly entered the default judgment. *See Matter of Camp*, 59 F.3d 548, 551 (5th Cir.1995).

Therefore, SMS's attacks on the jurisdiction of the Texas court which entered the default judgment are without merit and its claims against HG and LINQ for breach of contract, fraud, and unjust enrichment in this action are barred by res judicata.

### III.  *The RICO Claims*

To the extent that SMS's RICO claims against the defendants may not be embraced by the preclusive effect of the Texas judgment, they are addressed below in the context of defendants' 12(b)(6) motion.

On a motion to dismiss, the factual allegations of the complaint must be accepted as true, and the complaint must be liberally construed and its allegations considered in the light most favorable to plaintiffs. *Morin v. Trupin*, 711 F.Supp. 97, 103 (S.D.N.Y.

1989) (citing *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985) and *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). "A motion to dismiss will be granted only if it appears to be certain that the plaintiff is entitled to no relief under any set of facts which could be proved in support of the claim made." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

■ To establish a cause of action under RICO, a plaintiff must allege seven distinct elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce. *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984) *Id.*

■ A RICO claim must charge each named defendant with the commission of two or more predicate acts of racketeering activity. *Morin v. Trupin,* 747 F.Supp. 1051, 1064 (S.D.N.Y.1990). Those predicate acts which sound in fraud must comply with Fed.R.Civ.P. 9(b) which provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." To specify fraud with particularity, a plaintiff must allege specifically the circumstances of the fraud, including the content of any alleged misrepresentation, the date and place of the misrepresentation, and the identity of the speaker or writer. *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir.1994). Plaintiffs' must also provide factual allegations to support a "strong inference" that defendants had fraudulent intent. *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990). A strong inference may be established either by identifying circumstances showing conscious behavior by defendants, *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir. 1989), or by presenting facts which show a motive for committing fraud and an opportunity to do so. *Turkish v. Kasenetz,* 27 F.3d 23, 28 (2d Cir.1994). "All of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions." *Plount v. American Home Assurance Co., Inc.,* 668 F.Supp. 204, 206 (S.D.N.Y.1987).

■ SMS appears to charge the defendants with predicate acts of mail fraud, but alleges only that Hamer and Senter misrepresented the cause of the "down time" and that "upon information and belief, by use of the mails . . . the defendants were able to defraud the plaintiff." Compl. ¶¶ 17, 28. These allegations fail to satisfy the requirements of Rule 9(b) which applies with equal force to allegations of mail fraud as a RICO predicate offense. *Rich–Taubman Associates v. Stamford Restaurant Operating Co. Inc.,* 587 F.Supp. 875, 878 (S.D.N.Y.1984). SMS fails to connect the misrepresentations concerning the "down time" to any individual defendant and does not allege the date or place of any of the false statements. Nor does SMS identify circumstances showing conscious behavior or a specific intent to defraud by Hamer or Senter or allege facts which show a motive for committing fraud and an opportunity to do so. The complaint also fails to allege the content of the items mailed and does not specify how each of the items was false or misleading. *See Official Publications, Inc. v. Kable News Co.,* 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part and rev'd in part,* 884 F.2d 664 (2d Cir.1989). Accordingly, SMS has not sufficiently alleged the predicate act of mail fraud.

■ SMS has also failed to adequately allege a RICO "enterprise." "Enterprise" is defined in the RICO statute to include "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (West 1984). SMS's complaint, which does not even contain the word "enterprise," makes no attempt to define an enterprise, identify the persons who participated in it, or announce its purpose. As such, it has not satisfied the "enterprise" element of RICO.

■ The complaint is also deficient for its failure to plead a "pattern of racketeering activity." A "pattern" is established for RICO purposes where the predicate acts "themselves amount to, . . . or otherwise constitute a threat of, continuing racketeering activity." *HJ, Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). Factors including the number and variety of predicate acts, the length of time during which they were committed, the number of victims and the occurrence of distinct injuries are considered in determining whether such continuity exists. *See Continental Realty Corp. v. J.C. Penney, Inc.*, 729 F.Supp. 1452, 1454 (S.D.N.Y.1990). The Supreme Court has explained that predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the pattern requirement. *HJ, Inc.*, 492 U.S. at 241–42, 109 S.Ct. at 2901–02.

■ SMS alleges no facts from which a "pattern of racketeering activity" can be deduced. Its complaint alleges a single scheme that extended for less than a year and which involved one alleged corporate perpetrator, one corporate victim, and an uncomplicated transaction essentially relating to a simple breach of contract. *See Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F.Supp. 579 (S.D.N.Y.1989) (complaint alleging closed-ended scheme involving nearly fifty mail fraud violations, three perpetrators and one victim failed "pattern" requirement); *Passini v. Falke–Gruppe*, 745 F.Supp. 991 (S.D.N.Y.1990) (complaint alleging single scheme, single victim, single perpetrator and a business deal gone sour was no more than a straightforward breach of contract claim). Nor can the threat of any continuing criminal activity be rationally inferred. Accordingly, SMS's RICO claims must be dismissed.[3]

## IV. *Personal Jurisdiction Over Hamer and Senter*

Hamer and Senter also move under Fed. R.Civ.P. 12(b)(2) to dismiss the complaint against them for lack of personal jurisdiction. Personal jurisdiction over a defendant in a diversity case in the U.S. District Court for the Eastern District of New York is determined by reference to the relevant jurisdictional statutes of the State of New York. *See U.S. v. First Nat. City Bank*, 379 U.S. 378, 381–82, 85 S.Ct. 528, 530–31, 13 L.Ed.2d 365 (1965). Where, as here, personal jurisdiction is challenged by a Rule 12(b)(2) motion prior to discovery, a plaintiff may defeat the motion by pleading, in good faith, legally sufficient allegations of jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt, S.A.* 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). In that regard, all pleadings and affidavits are to be construed in the light most favorable to the plaintiff, and all doubts are to be resolved in the plaintiff's favor. *Hoffritz for Cutlery Inc., v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). Although SMS's stance concerning the position of Hamer and Senter in this litigation is, at best, vague, it appears to assert that this Court has jurisdiction over them under New York CPLR §§ 301 and 302(a)(1).

■ Under § 301, personal jurisdiction exists where a defendant is "doing business" in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917). "Doing business" has been equated with a continuous and systematic course of business by the defendant in New York. *Modern Computer Corp. v. Ma*, 862 F.Supp. 938, 944 (E.D.N.Y.1994). While this section applies to individuals doing business so as to be present within the State, *see ABKCO Industries v. Lennon*, 52 A.D.2d 435, 384 N.Y.S.2d 781 (1st Dept.1976), it is well settled that "where a corporation is doing business in New York, an officer of the corporation 'does not subject himself, individually to . . . 301 jurisdiction . . . unless he is doing business in [New York] individually.'" *Optimum Worldwide Ltd. v. Klebener*, No. 95 Civ. 1359(HB), 1996 WL 71500, at *2 (S.D.N.Y. Feb. 16, 1996) (quoting *Laufer v. Ostrow*, 55 N.Y.2d 305, 313, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982)).

---

3. Dismissal of the substantive RICO claims mandates dismissal of any RICO conspiracy claim as well. *See Purgess v. Sharrock*, 806 F.Supp. 1102, 1110, n. 9 (S.D.N.Y.1992).

SMS alleges generally that "the defendant's [sic]" engaged in business with other New York companies. Yet it makes no showing in the complaint or in the affidavit of its president, Vincent Annunziata, that either Hamer or Senter were "doing business" in New York individually with any measure of continuity. Thus, § 301 will not support jurisdiction over them.

Under § 302(a)(1), a defendant who "transacts business" in New York is subject to jurisdiction here.[4] A single transaction is sufficient even if the defendant never enters the state, "so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). In this case, SMS has not alleged the personal transaction of any business in New York by Hamer or Senter. Still, a non-resident corporate officer cannot avoid jurisdiction on the basis that he or she engaged in an offending activity solely in the context of his or her corporate capacity. Personal jurisdiction might obtain if it were alleged that Hamer or Senter were primary actors who exercised control over, and directly benefitted from, business that HG or LINQ might have transacted in New York. *Id.; Retail Software Services, Inc. v. Lashlee,* 854 F.2d 18, 22 (2d Cir.1988). However, no such allegations have been made.

New York courts are also authorized under § 302(a)(1) to exercise in personam jurisdiction over a nondomiciliary who contracts outside of New York to supply goods or services in New York as long as the cause of action arises out of the contract. *Alan Lupton Associates, Inc. v. Northeast Plastics, Inc.,* 105 A.D.2d 3, 482 N.Y.S.2d 647, 650 (4th Dept.1984). A cause of action "arises out of the contract" when the plaintiff's claim is directly related to the activity purposefully directed at New York by the defendants. *En Vogue v. UK Optical Ltd.,*

843 F.Supp. 838, 841 (E.D.N.Y.1994). Jurisdiction over Hamer and Senter under this clause of § 302(a)(1) is not available because SMS makes no allegation that either individual contracted to supply goods or services in New York. *See Bulk Oil (USA) v. Sun Oil Trading Co.,* 584 F.Supp. 36 (S.D.N.Y.1983).

Furthermore, neither Hamer nor Senter had personal contacts with New York which would support this Court's exercise of jurisdiction over them. Neither set foot in New York during their dealings with SMS and it is highly unlikely that either could have foreseen being individually sued in New York based on a contract which was to be performed by their corporations in Texas and governed by Texas law. Accordingly, this Court cannot exercise personal jurisdiction over either Hamer or Senter.

### CONCLUSION

For the foregoing reasons, the defendants' motion is granted and the complaint will be dismissed with prejudice.

SO ORDERED.

---

4. Section 302(a) of the CPLR provides in pertinent part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state.