Terri MOORE, Individually and as Independent Executrix of the Estate of Lawrence Woodland, Jr., Deceased, and Michelle E. Woodland, Appellants/Cross–Appellees

v.

FIRST FINANCIAL RESOLUTION ENTERPRISES, INC., Appellee/Cross–Appellant.

No. 05–07–00565–CV.

Court of Appeals of Texas, Dallas.

Jan. 30, 2009.

Jeffrey L. Clark, Kelsoe, Anderson, Khoury & Clark, P.C., Dallas, TX, for Appellant.

James V. Jay IV, Thomas M. Michel, Griffith, Jay, Michel & Moore, L.L.P., Fort Worth, TX, for Appellee.

Before Justices MOSELEY, BRIDGES, and LANG–MIERS.

## OPINION

Opinion by Justice MOSELEY.

In 1981, Lawrence Alton Woodland, Jr. (now deceased) borrowed money from NCNB Texas and then paid it back. This unremarkable transaction has spawned four lawsuits between the parties before us or their predecessors. In this, the most recent case, the probate court rendered judgment in favor of First Financial Resolution Enterprises, Inc. against Terri Moore, as Independent Executrix of Woodland's estate, for $89,857.07 and attorney's fees. In their first issue, appellants contend the probate court erred by not determining that First Financial's claims were barred by rule of civil procedure 97 regarding compulsory counterclaims and res judicata. Cross-appellant argues it was entitled to more relief than it received. For the reasons that follow, we reverse the probate court's judgment and render judgment that First Financial take nothing.

## I. BACKGROUND

This is the third appeal involving these parties over this claim. See First Fin. Resolution Enters., Inc. v. Moore, No. 05–04–01671–CV, 2006 WL 540326 (Tex.App.-Dallas Mar.7, 2006, no pet.) (mem.op.); Moore v. First Fin. Resolution Enters., Inc., 165 S.W.3d 456 (Tex.App.-Dallas 2005, no pet.). We outlined this litigation's background in our 2006 memorandum opinion. In 1981, Woodland executed a note for $13,000 in favor of NCNB Texas. Woodland paid the note, and NCNB released the lien securing the note. Nevertheless, in an apparent error, NCNB assigned the note to LM Holdings, Inc., which sued Woodland on the note. In an affidavit, Woodland said: he contacted NCNB about the suit; NCNB confirmed the note had been paid; and, NCNB told him no judgment would be entered against him. Woodland did not answer the suit, and, in 1995, LM Holdings, Inc. obtained a default judgment against Woodland for $28,627.42, postjudgment interest, and attorney's fees. Moore, 2006 WL 540326, at *1.

LM Holdings, Inc. subsequently assigned the judgment to First Financial. In 2002, Woodland sued in county court seeking to enjoin First Financial's execution of the 1995 judgment. While that suit was pending, Woodland died, and his executor, Moore, was substituted as a party. The county court granted First Financial a take-nothing summary judgment against Moore, and this Court affirmed. Id. See Moore, 165 S.W.3d at 460.

Meanwhile, in 2003, First Financial served Moore with an "authentic secured claim" and a copy of the 1995 judgment, informing her it was asserting a claim against Woodland's estate. Moore informed First Financial she was disputing all of First Financial's claims. Moore, 2006 WL 540326, at *1. She then filed suit in probate court seeking a declaratory judgment that any claim First Financial had against the estate was barred (the Moore Suit). First Financial answered, asserting a general denial, affirmative defenses, and a counterclaim for a turnover order seeking to enforce the 1995 judgment against the estate. Following a bench trial, the probate court rendered judgment that First Financial's claim was barred pursuant to certain sections of the probate code and that it take nothing on its turnover order counterclaim. On appeal, we reversed the declaratory judgment in Moore's favor and rendered a take-nothing judgment on her suit for declaratory relief because there was no evidence supporting the probate court's find-

ings that First Financial had failed to comply with the applicable sections of the probate code. *Id.* at *2. We also concluded the 1995 judgment would not support a turnover order against Moore because "the executor is not a judgment debtor with respect to the 1995 judgment." *Id.* In reaching this conclusion, we stated:

> [B]ecause First Financial never sued the executor, First Financial does not have a money judgment against the estate. It has only a 1995 default judgment against Woodland. Once a judgment debtor dies, the judgment ceases to have the force of a judgment and becomes merely a claim to be established against the estate in the same manner as other claims. Further, under the turnover statute, a court may order the "judgment debtor" to turn over nonexempt property that is in the debtor's possession or subject to his control.

*Id.* (citations omitted). Finally, we remanded the award of attorney's fees for reconsideration. *Id.* at *3. Following remand, the probate court denied First Financial's request for attorney's fees. It is undisputed that neither party appealed that judgment.

## II. PETITION AND ANSWER

In September 2006, First Financial filed its original petition in this suit, alleging: (1) a default judgment had been granted against the decedent, and First Financial was the current owner and holder of that judgment as a result of an assignment executed by LM Holdings, Inc.; (2) pursuant to the terms of the judgment, First Financial was entitled to the original principal sum of $29,627.42 plus postjudgment interest; and (3) neither the decedent nor Moore had made any payment on the judgment. First Financial further alleged: (4) Moore "breached her fiduciary and statutory duties by failing to properly and timely

pay the claim arising from the Judgment due to Plaintiff"; (5) Moore "mismanaged the estate of Decedent by failing to properly and timely pay the claim arising from the Judgment due to Plaintiff"; (6) all conditions precedent had been performed or had occurred, and the claim was timely presented to Moore and remained unpaid; (7) Moore fraudulently transferred to Michelle (a beneficiary under the will) certain described real property, which was property of the decedent's estate subject to First Financial's claim and despite knowledge of that claim against the decedent's estate; (8) similarly, Moore fraudulently transferred to Michelle receivables arising out of the Decedent's sale of certain described real property; and (9) if the court determined the transfers of property to Michelle were not fraudulent, the court should "order that such transfers were subject to the claim of Plaintiff and therefore that such properties are subject to execution to satisfy Plaintiff's claim." As relief First Financial requested: (1) judgment for $29,627.42 as the principal amount due on the judgment, punitive damages, postjudgment interest, costs of court, and attorney's fees; (2) judgment that the transfer of the described property from Moore to Michelle "was void with respect to Plaintiff"; (3) judgment setting aside and canceling the conveyance of the described property as fraudulent; and (4) the court "order that execution of the judgment issue against property [of] Decedent's estate in the hands of Defendants."

In their first amended original answer, Moore and Michelle denied the allegations and asserted two affirmative defenses. First, they asserted that First Financial's claims were barred by the compulsory counterclaim rule pursuant to rule of civil procedure 97 because, in the Moore Suit,

the attorney's fee claim was retried after remand, judgment was rendered, and the judgment was not appealed, making that judgment final. They asserted that First Financial's claims "made herein should have been asserted in [the Moore Suit], but were not." Therefore, they were barred.

Second, Moore and Michelle pleaded the affirmative defense of res judicata "based on the [Moore Suit]." Finally, they alleged that this Court determined that the 1995 judgment ceased to be effective as a judgment, but instead was a claim to be proved by First Financial, and that the underlying note which was the subject of final judgment in the Moore Suit had been paid and a release of lien filed. On these premises, they pleaded "payment, release, waiver and estoppel."

## III. TRIAL TO THE COURT AND JUDGMENT

At the hearing, the parties agreed to admit the pleadings from the Moore Suit as exhibits. There was testimony that the amount due on the original judgment with postjudgment interest was $89,857.07. It was undisputed that Moore, in her capacity as the independent executrix, transferred six pieces of real estate from the estate to Michelle; no reasonable equivalent value was tendered to the estate at the time of the transfer; Moore and Michelle had received the authenticated secured claim before those transfers; First Financial's claim was unpaid; and, the estate had a value of about $400,000 before these transfers and was "insolvent" thereafter.

The probate court rendered judgment in favor of First Financial against Moore, Independent Executrix, for $89,857.07, at-

torney's fees of $7,500, postjudgment interest, and costs. The trial court did not enter judgment in favor of First Financial against Michelle. The judgment states that "[a]ll relief requested in this case and not expressly granted is denied" and that it "finally disposes of all parties and claims...."

At the request of both parties, the probate court made findings of fact and conclusions of law but subsequently set them aside. We abated this case and ordered the probate court to make findings of fact and conclusions of law and file them in a supplemental clerk's record. The probate court complied with our order, and we reinstated this appeal.[1] The trial court's findings of fact and conclusions of law are identical to those it made previously and then set aside. We then allowed time for the parties to file supplemental briefs.

## IV. COMPULSORY COUNTERCLAIMS

In their first issue, appellants contend the probate court erred by failing to determine that First Financial's claims against Moore were barred by rule of civil procedure 97 because they were compulsory counterclaims in the Moore Suit and barred as a matter of law in this suit.

### A. Applicable Law

 A counterclaim is compulsory only if meets the following six characteristics: (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the claim is mature and owned by the defendant at the time of filing the answer; (4) it arose out of the same transaction or

1. As a result, appellants' second issue and First Financial's alternative second cross-point on appeal, which are based on the set-aside order and contend this appeal should be abated to allow the probate court to make findings of fact and conclusions of law, are moot.

occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require the presence of third parties over whom the court cannot acquire jurisdiction. *Ingersoll–Rand Co. v. Valero Energy Corp.,* 997 S.W.2d 203, 207 (Tex.1999) (citing TEX.R. CIV. P. 97(a) & (d)). A compulsory counterclaim must be asserted in the initial action and cannot be asserted in later actions; a party's failure to assert a compulsory counterclaim precludes that party from asserting it in later lawsuits. *Id.; Williams v. Nat'l Mortgage Co.,* 903 S.W.2d 398, 403 (Tex. App.-Dallas 1995, writ denied); *Weiman v. Addicks–Fairbanks Road Sand Co.,* 846 S.W.2d 414, 415 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

■ The compulsory counterclaim rule is an affirmative defense; therefore, appellants have the burden to plead and prove all elements of the compulsory counterclaim rule. *See Weiman,* 846 S.W.2d at 419.

## B. The Trial Court's Ruling Concerning Compulsory Counterclaim

The probate court made express findings of fact in favor of appellants on five of the six *Ingersoll–Rand* compulsory counterclaim elements.[2] However, it did not make any finding as to whether First Financial's claim "arose out of the same transaction or occurrence that is the sub-

ject matter of the opposing party's claim" in the Moore Suit. *See Ingersoll–Rand co.,* 997 S.W.2d at 207. Further, the probate court concluded that Moore as Independent Executrix of Woodland's estate was not entitled to prevail on her rule 97 compulsory counterclaim defense. Thus, the probate court impliedly found against appellants on this sixth element. *See* TEX.R. CIV. P. 299 ("Omitted Findings"; providing, in relevant part: "[W]en one or more elements thereof [i.e., 'any ground of recovery or defense'] have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.").

## C. Standard of Review

■ Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict and may be reviewed for legal and factual sufficiency of the evidence. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). When a reporter's record is part of the record before the appellate court, the legal and factual sufficiency of implied findings may be challenged on appeal the same as a trial court's findings of fact. *See Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984). A party attacking the legal sufficiency of the evi-

---

**2.** Specifically, the probate court made findings of fact, which we paraphrase as follows:

In the Moore Suit, the probate court had jurisdiction over First Financial's claim for $29,627.42 against Moore as Independent Executrix.

In the Moore Suit, there was no other pending action between Moore as Independent Executrix and First Financial.

In the Moore Suit, First Financial's claim for $29,627.42 against Moore as Independent Executrix was mature at the time the Moore Suit was tried.

In the Moore Suit, Moore as Independent Executrix filed suit to declare that First Financial had no valid claim against her to recover its claims for $29,627.42.

In the Moore Suit, both Moore as Independent Executrix and First Financial appeared in the same capacity as they did in the present case.

The Moore Suit did not require the presence of third parties over whom the probate court could not acquire jurisdiction.

dence supporting an adverse finding of fact on which it had the burden of proof must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* We indulge every reasonable inference to support the finding, crediting favorable evidence if a reasonable jury could and disregarding contrary evidence unless a reasonable jury could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex.2005). If there is no evidence to support the finding, we will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem. Co.,* 46 S.W.3d at 241. The issue should be sustained only if the contrary proposition is conclusively established. *Id.* The trial court's conclusions of law are reviewed de novo. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 222 (Tex.2002).

### D. Discussion

Appellants argue that all elements of the compulsory counterclaim rule are met and are supported by evidence. The probate court specifically found all but one of the *Ingersoll–Rand* elements in appellants' favor. We agree there is no dispute on appeal as to those elements of appellants' compulsory counterclaim affirmative defense.[3] Thus, the question dispositive of

appellant's first issue is whether First Financial's claims here arose out of the same transaction or occurrence that was the subject matter of Moore's claim in the Moore Suit. *See Ingersoll–Rand Co.,* 997 S.W.2d at 207.

■■ We apply a logical relationship test to determine whether counterclaims arise out of the same transaction or occurrence. *Jack H. Brown & Co. v. Nw. Sign Co.,* 718 S.W.2d 397, 400 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). *See Frazier v. Havens,* 102 S.W.3d 406, 411 n. 3 (Tex. App.-Houston [14th Dist.] 2003, no pet.); *Freeman v. Cherokee Water Co.,* 11 S.W.3d 480, 483 (Tex.App.-Texarkana 2000, pet. denied). The logical relationship test is met when the same facts, which may or may not be disputed, are significant and logically relevant to both claims. *Jack H. Brown & Co.,* 718 S.W.2d at 400. *See Frazier,* 102 S.W.3d at 411 n. 3 (considering "same transaction or occurrence" requirement and stating that to be logically related, essential facts on which counterclaims are based should be "significantly and logically relevant to both claims"); *Freeman,* 11 S.W.3d at 483 (same).

■ Reviewing the evidence in the record, and ignoring all evidence to the contrary, we conclude there is no evidence to support the implied finding that the facts concerning the existence and enforceability of the unpaid 1995 default judgment were not significantly and logically relevant to both Moore's claim in the Moore Suit and to First Financial's claims here. *See Dow Chem. Co.,* 46 S.W.3d at 241. Additionally,

---

**3.** Specifically, there is no dispute that First Financial's claims based on its assertion that the estate owed money to it were within the probate court's jurisdiction when the Moore Suit was pending, *see* TEX. PROB.CODE ANN. § 5A(b) (Vernon Supp.2008); Moore and First Financial are in opposition here in the same capacity as they were in the Moore Suit;

those claims did not require the presence of third parties over whom the court could not acquire jurisdiction; and, that there was no other pending action between First Financial and Moore when the Moore Suit was pending. *See Ingersoll–Rand Co.,* 997 S.W.2d at 207; TEX.R. CIV. P. 97(a).

after examining the entire record, we conclude as a matter of law that the same facts—namely, the existence and enforceability of the unpaid 1995 default judgment—were significantly and logically relevant to both Moore's claim in the Moore Suit and to First Financial's claims here.

The evidence contains the pleadings of the Moore Suit. There, Moore pleaded: "Plaintiff would further show that [First Financial] has no claim against Plaintiff as [First Financial]'s claim arises out of a note that was already fully paid and released." Moore also pleaded that she "have Judgment determining ... that any claim [First Financial] has is denied...."[4]

We have already set forth First Financial's factual allegations in its petition in this suit, including allegations that: (1) a default judgment had been granted against the decedent, and First Financial was the current owner and holder of that judgment as a result of an assignment executed by LM Holdings, Inc.; (2) pursuant to the terms of the judgment, First Financial was entitled to the original principal sum of $29,627.42 plus postjudgment interest; and (3) neither the decedent nor Moore had made any payment on the judgment. In addition, at the hearing, First Financial's president agreed that "the sole purpose of First Financial concerning this case is to enforce and recover all that 1995 judgment that was entered against Mr. Woodland."

As a result, we conclude that appellants proved the sixth element of their compulsory counterclaim affirmative defense as a matter of law. *See id.* *See also Frazier,* 102 S.W.3d at 411 n. 3; *Freeman,* 11 S.W.3d at 483; *Jack H. Brown & Co.,* 718 S.W.2d at 400.

◼ First Financial makes four arguments in support of its contention that its claims here did not arise out of the same transaction or occurrence as Moore's claims in the Moore Suit. First, First Financial argues that Moore's claim in the Moore Suit was that First Financial had failed to timely present a claim and the issue in the Moore Suit was whether Moore had sent a proper notice letter which would have barred First Financial's claim. A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation, without regard to the form of action. *Morris v. Landoll Corp.,* 856 S.W.2d 265, 268 (Tex.App.-Fort Worth 1993, writ denied) (citing *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 630 (Tex. 1992)). Thus, we consider the facts, not the issues decided, in the Moore Suit.

Second, First Financial argues its claims in this suit are based on allegations that Moore improperly transferred estate assets to Michelle and this fraudulent transfer claim could not have been brought in the Moore Suit because that transfer had not yet occurred. As the record shows, all First Financial's causes of action and relief in this suit are based on the "unpaid claim." *See Jack H. Brown & Co.,* 718 S.W.2d at 400 (parties' contract to make and install a sign was basis of original and subsequent suits; claim for failure to pay for steel pipe used in constructing sign was compulsory counterclaim in original suit and barred in second suit). Whether the Moore Suit involved a timely claim under the probate code or this suit concerns the transfer of estate assets, the facts concerning the existence and enforceability of the unpaid 1995 default judgment are signifi-

---

**4.** Moreover, in its answer in the Moore Suit, First Financial also asserted a counterclaim for turnover relief based on its recovery of "a Default Judgment against [Woodland] in ... 1995 [that] remains unsatisfied."

cant and logically relevant to both suits. *See id. See also Frazier*, 102 S.W.3d at 411 n. 3; *Freeman*, 11 S.W.3d at 483.

Third, First Financial argues that the declaratory judgment action in the Moore Suit is not the type of proceeding that lends itself to compulsory counterclaims. By failing to cite any authority to support this argument, First Financial has failed to preserve this argument on appeal. *See* TEX.R.APP. P. 38.1(h) (brief must contain appropriate citations to authorities). Even if First Financial has preserved this argument, that argument was considered and rejected in *Weiman*, 846 S.W.2d at 418 ("Compulsory counterclaims are appropriate in declaratory judgment actions when the Rule 97(a) requirements are met.").

▇▇▇ Fourth, First Financial argues the compulsory counterclaim rule does not apply in the administration of an estate because "each estate process and application is an individual type of proceeding." Again, First Financial cites no authority to support this position. *See* TEX.R.APP. P. 38.1(h). Assuming First Financial has preserved this argument, we reject it because the Texas Rules of Civil Procedure govern proceedings in probate matters except in those instances in which a specific provision has been made to the contrary. *See Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex.1983) (citing TEX.R. CIV. P. 2).

The trial court improperly concluded that First Financial's claims were not barred by appellants' compulsory counterclaim affirmative defense. We sustain appellants' first issue to this extent. Therefore, the probate court erroneously rendered judgment in favor of First Financial on its monetary claim.[5]

## V. FIRST FINANCIAL'S CROSS POINT

In its first cross-point, First Financial argues the probate court erred by failing to grant judgment against Moore and Michelle because "it was undisputed that Moore had made a fraudulent transfer to [Michelle] and because Moore had failed to comply with the Probate Code." First Financial also argues it is entitled to relief in addition to the money judgment, i.e.: setting aside the property transfers; judgment against Moore and Michelle, individually; and, a lien imposed on the transferred property.

However, whether First Financial is entitled to any relief—against either Moore or Michelle[6]—is subject to appellants' argument that all First Financial's claims in this suit arose from the unpaid 1995 default judgment, and thus as a matter of law were compulsory counterclaims to the Moore Suit and are therefore barred in this suit. As we have sustained appellants' first issue, we conclude that First Financial's cross-point has no merit. *See Ingersoll–Rand Co.*, 997 S.W.2d at 207; *Williams*, 903 S.W.2d at 403; *Weiman*, 846 S.W.2d at 415. *See also* TEX.R.APP. P. 47.1.

## VI. CONCLUSION

We reverse the probate court's judgment and render judgment that First Fi-

---

5. We need not address appellants' second issue (based on res judicata). *See* TEX.R.APP. P. 47.1. Moreover, although appellants' issue statement includes res judicata as a theory on which it was entitled to prevail, appellants argue only rule 97. *See* TEX.R.APP. P. 38.1(h) (brief must contain argument and appropriate citations to authorities and record).

6. We note that First Financial's claims against Michelle are based on her status as Moore's transferee. To the extent Moore's transfer was not fraudulent, First Financial's claims against Michelle fail as well.

nancial take nothing. *See* TEX.R.APP. P. 43.3 (subject to exceptions not applicable here, when reversing judgment, appellate court "must render the judgment that the trial court should have rendered").