

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-09-218-CV**

DINAH LYNN VASQUEZ                                  APPELLANT

V.

PHILLIP JOSEPH VASQUEZ                             APPELLEE

------------

## FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Dinah Lynn Vasquez brings this appeal complaining of the possession and access portions of a final decree of divorce. In two issues, Dinah argues that the trial court's failure to make findings of fact and conclusions of law

---

[1] *See* Tex. R. App. P. 47.4.

was error and that the trial court's decision limiting Dinah's possession of and access to her minor child[2] was an abuse of discretion. We will affirm.

## II. PERTINENT PROVISIONS IN THE FINAL DECREE OF DIVORCE[3]

The final decree of divorce appointed Appellee Phillip Joseph Vasquez as sole managing conservator and Dinah as possessory conservator of their two children. The final decree contains a modified possession order, allowing Dinah visitation with the children on the first and third weekends of each month (with one of those weekends containing an overnight visitation period) and five consecutive days in the summer. The final decree also states that if the younger daughter is not comfortable with the weekend visitation schedule, the parties should set up a status hearing with the trial court.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

In her first issue, Dinah argues that the trial court's failure to make findings of fact and conclusions of law was error. Dinah argues that a new trial on the issue of possession and access is therefore necessary. This court, on its own motion, abated the case for the trial court to enter findings of fact and conclusions of law, and a supplemental clerk's record containing findings of fact and conclusions of law has

---

[2] Although there were two minor children at the time the decree of divorce was signed, one of the children has now attained the age of majority.

[3] Dinah appeals only the possession and access orders, not the granting of the divorce or the division of property.

2

been filed. We therefore overrule Dinah's first issue as moot. *See Zwick v. Zwick*, No. 02-08-00182-CV, 2009 WL 1564928, at *2 (Tex. App.—Fort Worth June 4, 2009, no pet.) (mem. op.) (citing *Moore v. First Fin. Resolution Enters., Inc.*, 277 S.W.3d 510, 514 (Tex. App.—Dallas 2009, no pet.), and holding that trial court's entry of findings of fact and conclusions of law following abatement for same mooted complaint that such findings and conclusions had not been made).

## IV. Possession and Access Order Was Supported By Record

In her second issue, Dinah argues that the trial court abused its discretion by limiting her possession of and access to her minor child. Specifically, Dinah argues that there is no evidence in the record that harm will come to her child if she is awarded standard possession and access.

The public policy of this State is to assure continuing contact between children and parents who have established the ability to act in their child's best interest; to provide a safe, stable, and nonviolent environment for the child; and to encourage parents to share in their child's development after separation or divorce. Tex. Fam. Code Ann. § 153.001 (Vernon 2008). When determining issues related to conservatorship or possession of and access to the child, the best interest of the child is the primary consideration. *Id.* § 153.002; *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003).

3

The Texas Family Code provides guidelines for trial judges to follow when determining the periods of possession for a possessory conservator. Tex. Fam. Code Ann. § 153.192(b) (Vernon 2008). The Texas Family Code also provides that there is a rebuttable presumption that the standard possession order (1) provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator and (2) is in the best interest of the child. *Id.* § 153.252. However, the Texas Family Code allows a trial court to deviate from the standard possession order. When deviating from the standard possession order, a trial court may consider (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named possessory conservator; and (3) any other relevant factor. *Id.* § 153.256.

In determining the issues of conservatorship and possession of and access to the child, the trial court is given wide latitude in determining the best interest of the child and will be reversed only for an abuse of discretion. *In re C.R.T.*, 61 S.W.3d 62, 65 (Tex. App.—Amarillo 2001, pet. denied) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). This is, in part, because the trial court is in a better position having "faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *Coleman v. Coleman*, 109 S.W.3d 108, 111 (Tex. App.—Austin 2003, no pet.). Thus, when the

testimony of witnesses is conflicting, this court will not disturb the credibility determinations made by the factfinder. *See id.* A reviewing court's holding that a trial court did not abuse its discretion implies that the evidence contained in the record rebutted the presumption that the standard possession order was reasonable and in the child's best interest. *See Niskar v. Niskar*, 136 S.W.3d 749, 756 (Tex. App.—Dallas 2004, no pet.).

Dinah testified that Phillip suffers from depression and that there have been times when she felt like he was potentially dangerous to himself. She said that he would lock himself in the bedroom, that he would break things, and that he would go into fits of rage in front of the children. Dinah also said that if Phillip had a bad day at work, he took it out on their daughter by whipping her, that he was verbally and physically abusive, and that he played mind games. Dinah testified that the police came to their house in 2004 and made Phillip leave. Dinah said that Phillip went to strip clubs and viewed pornography. He also had a girlfriend, whom their minor daughter did not like. Dinah testified that there was a time while the divorce was pending when Phillip was not regularly washing the girls' clothes, and the girls were not clean because they had not bathed in three or four days. Dinah's mother testified that Dinah is a wonderful mother whose daughters love her dearly. Moreover, Celia Lowry, who counseled Dinah from 2004 to 2005, testified that she believed that Dinah was capable of parenting her children and capable of making rational decisions.

Phillip admitted that he has allowed his girlfriend to babysit his daughters while he went out of town and that he did not allow Dinah to care for their children during that time. Phillip said that Dinah was violent and had pulled the phone out of the wall on one occasion when he was trying to call for help. He said that he had never hit Dinah but admitted that he had called her a "cow" and had bitten her on two occasions when he was trying to defend himself because she had attacked him. Phillip said that he took Lexapro from August 2004 to May 2005 because he was very upset and distraught; he also said that he had locked himself in the bedroom after a fight with Dinah and that he had destroyed things in the home. He testified that he was the one who had called the police in 2004 and that he had left the residence on his own, leaving the children with Dinah because she had calmed down. Phillip agreed that Dinah has never been diagnosed as schizophrenic, delusional, or paranoid; that CPS has never been called on Dinah; and that there have been no incidents with the police involving Dinah and the children. Phillip testified that he no longer believes that Dinah's visits should be supervised but that he is requesting a restricted visitation schedule. Phillip admitted that he has visited strip clubs and looked at pornography and said that Dinah looked at pornography with him. Dr. Flynn, who was appointed by the court to conduct a social study, noted in his report that Phillip is likely to be seen by others as unusually stable and predictable, that he displays a high level of tolerance for others' inconsistencies, and that he is a counterpoint to Dinah's mercurial personality.

6

In addition to the above testimony, the trial court also heard live testimony from Dr. Flynn and Dr. Cook,[4] both of whom had interviewed Dinah. Dr. Flynn testified that Dinah does not have good filters, and therefore her ability to process stimuli is impaired. He said that Dinah's impaired thinking will cause her to be unpredictable and erratic and that it will be hard to get her to think through a problem. He noted that several observers had reported that Dinah had unpredictable temper outbursts. He, however, did not find any physical abuse of the girls by Dinah and said that there had been no CPS referrals. Dr. Flynn testified that Dinah is not likely to cause harm to her daughters by any affirmative act and that he does not believe that she should be required to have supervised visits. He opined that there will be problems if Dinah has the girls for more than one night and that a full thirty-day summer visit would be "asking for trouble." He thinks that in a few years, the minor daughter will be able to decide to go home (to Phillip's house) if things go awry while she is visiting Dinah. He urged the court to find a balance so that "we don't pay the huge price of supervision and restriction; but, on the other hand, we don't take the unnecessary risk of putting the child in the care of someone . . . whose conduct is not particularly stable and predictable."

Dr. Cook testified that he performed an evaluation on Dinah in April 2005. After conducting two clinical interviews and administering three standardized

---

[4] Dinah was referred to Dr. Cook by her counselor, Patricia Myers, because she wanted Dr. Cook to assess Dinah for the possibility of a delusional disorder.

7

psychological tests on Dinah, Dr. Cook saw nothing out of the ordinary, "nothing approaching delusional." He said that Dinah's verbal responses were organized, coherent, logical, and showed no intellectual disorganization; moreover, all three tests were negative for delusional thinking and for any kind of psychiatric disorder. Although Dinah showed subtle paranoid qualities, they did not rise to the level of abnormal, and her clinical profile was within normal limits with no indications of any serious psychological problems. Dr. Cook said that the tests showed that Dinah is usually a confident, socially outgoing, and reasonably well-adjusted person. Dr. Cook said that it is highly unlikely that Dinah would engage in serious distortions of her social environment or develop full-blown delusional thinking, so he does not believe that Dinah should be denied access to her children or be required to have supervised visitation.

The trial court stated in its findings of fact that it found the testimony of Dr. Flynn to be more credible and more persuasive than the testimony of Dr. Cook because it was based on more recent interviews (i.e., interviews from 2007 to 2008 as opposed to the interview in April 2005 conducted by Dr. Cook); Dr. Flynn's report was more extensive in that it included interviews with both parties and the children, whereas Dr. Cook interviewed only Dinah; and Dr. Flynn focused on what he described as Dinah's "impaired thinking" and explained that her responses to things that affect her are governed very much by her emotions and not by any kind of a logical rational basis, making her unpredictable. In Dr. Flynn's testimony, and in the

8

supporting social study and supplemental letter, he described in detail why the best interest of the children would best be served by restricting Dinah's visitation with them.[5]   After the trial court concluded that Dinah's "impairment," i.e., her "'unpredictable temper outbursts['] []called for less frequency and less duration in her visits with her children than what would normally be granted to a parent who did not have such impairment," the trial court followed Dr. Flynn's recommendation that Phillip be appointed sole managing conservator of the children and his recommendation that Dinah's visitation with the children be restricted.  The trial court left open the possibility of Dinah's modifying her visitation with the minor child in the future.

Although the witnesses' testimonies were contradictory at times, the trial court was in the best position to judge the witnesses' credibility.  Moreover, only one of the psychologists—Dr. Flynn, who was appointed by the trial court to perform a social study—had recently interviewed the parties and the children, and his testimony and report supported naming Phillip as sole managing conservator and limiting Dinah's

---

[5] Three months after Dr. Flynn's original report, he supplemented it in light of a phone conference with Patricia Myers, who had been counseling the children for an extended period of time.  Dr. Flynn reported that Myers offered her "strongly-held" opinion that Dinah's periods of possession with the children should be supervised because her daughters were frightened of her anger.  Myers stated that Dinah was not psychologically stable and referenced an earlier psychological evaluation by Dr. Tom Cook that had used the word "paranoia" to describe Dinah Vasquez's psychological functioning.  Dr. Cook, however, testified at the final trial that although Dinah's psychological tests from 2005 showed subtle paranoid qualities, he tried to make clear that he was not saying that she was paranoid.

possession of and access to her child. Thus, the record supported the trial court's decision to vary from the standard possession order.[6]

Accordingly, we hold that the trial court did not abuse its discretion by entering a modified possession and access order that was in the child's best interest. *Cf. In re Marriage of Swim*, 291 S.W.3d 500, 507 (Tex. App.—Amarillo 2009, no pet.) (holding that trial court did not abuse its discretion by restricting father's possession of and access to child when record demonstrated that father had drug dependence, type one bipolar disorder, a history of drug relapses, and past medication cessation); *Warnock v. Warnock*, No. 14-94-01049, 1996 WL 606987, at *6–7 (Tex. App.—Houston [14th Dist.] Oct. 24, 1996, no writ) (not designated for publication) (holding that record contained ample evidence to support trial court's modification order when record revealed that mother suffered from at least moderate emotional and psychological problems and that clinical psychologist opined that mother would be less able to meet her children's needs). We therefore overrule Dinah's second issue.

---

[6] To the extent that Dinah's second issue may be liberally construed as challenging the sufficiency of the evidence to support the trial court's decision to deviate from the standard possession order, the evidence in the record is legally and factually sufficient to support the findings of fact, mentioned above, which were relied upon by the trial court in concluding that a modified possession order was appropriate. *See Askew v. Askew*, No. 02-04-00109-CV, 2005 WL 2471539, at *3 (Tex. App.—Fort Worth Oct. 6, 2005, no pet.) (mem. op.) (holding that the evidence was legally and factually sufficient upon which the trial court could exercise its discretion in appointing father as sole managing conservator).

## V.  Conclusion

Having overruled Dinah's two issues, we affirm the trial court's judgment.


SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED: June 3, 2010