COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-218-CV

 

 

DINAH LYNN VASQUEZ                                                                     APPELLANT

 

                                                             V.

 

PHILLIP JOSEPH
VASQUEZ                                                                APPELLEE

 

                                                       ------------

 

               FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                                       ------------

 

                                      MEMORANDUM
OPINION[1]

                                                       ------------

I.  Introduction








Appellant
Dinah Lynn Vasquez brings this appeal complaining of the possession and access
portions of a final decree of divorce. 
In two issues, Dinah argues that the trial court=s
failure to make findings of fact and conclusions of law was error and that the
trial court=s
decision limiting Dinah=s possession of and access
to her minor child[2]
was an abuse of discretion.  We will
affirm.

II.  Pertinent Provisions in the Final Decree of
Divorce[3]

The
final decree of divorce appointed Appellee Phillip Joseph Vasquez as sole
managing conservator and Dinah as possessory conservator of their two
children.  The final decree contains a
modified possession order, allowing Dinah visitation with the children on the
first and third weekends of each month (with one of those weekends containing
an overnight visitation period) and five consecutive days in the summer.  The final decree also states that if the
younger daughter is not comfortable with the weekend visitation schedule, the
parties should set up a status hearing with the trial court. 

III.  Findings of Fact and Conclusions of Law








In
her first issue, Dinah argues that the trial court=s
failure to make findings of fact and conclusions of law was error.  Dinah argues that a new trial on the issue of
possession and access is therefore necessary. 
This court, on its own motion, abated the case for the trial court to
enter findings of fact and conclusions of law, and a supplemental clerk=s
record containing findings of fact and conclusions of law has been filed.  We therefore overrule Dinah=s
first issue as moot.  See Zwick v.
Zwick, No. 02-08-00182-CV, 2009 WL 1564928, at *2 (Tex. App.CFort
Worth June 4, 2009, no pet.) (mem. op.) (citing Moore v. First Fin. Resolution
Enters., Inc., 277 S.W.3d 510, 514 (Tex. App.CDallas
2009, no pet.), and holding that trial court=s
entry of findings of fact and conclusions of law following abatement for same
mooted complaint that such findings and conclusions had not been made).

IV.  Possession and Access Order Was Supported By
Record

In
her second issue, Dinah argues that the trial court abused its discretion by
limiting her possession of and access to her minor child.  Specifically, Dinah argues that there is no
evidence in the record that harm will come to her child if she is awarded
standard possession and access. 

The
public policy of this State is to assure continuing contact between children
and parents who have established the ability to act in their child=s
best interest; to provide a safe, stable, and nonviolent environment for the
child; and to encourage parents to share in their child=s
development after separation or divorce. 
Tex. Fam. Code Ann. ' 153.001
(Vernon 2008).  When determining issues
related to conservatorship or possession of and access to the child, the best
interest of the child is the primary consideration.  Id. '
153.002; In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).








The
Texas Family Code provides guidelines for trial judges to follow when
determining the periods of possession for a possessory conservator.  Tex. Fam. Code Ann. ' 153.192(b)
(Vernon 2008).  The Texas Family Code
also provides that there is a rebuttable presumption that the standard
possession order (1) provides reasonable minimum possession of a child for
a parent named as a possessory conservator or joint managing conservator and (2)
is in the best interest of the child.  Id.
'
153.252.  However, the Texas Family Code
allows a trial court to deviate from the standard possession order.  When deviating from the standard possession
order, a trial court may consider (1) the age, developmental status,
circumstances, needs, and best interest of the child; (2) the
circumstances of the managing conservator and of the parent named possessory
conservator; and (3) any other relevant factor. 
Id. ' 153.256.








In
determining the issues of conservatorship and possession of and access to the
child, the trial court is given wide latitude in determining the best interest
of the child and will be reversed only for an abuse of discretion.  In re C.R.T., 61 S.W.3d 62, 65 (Tex.
App.CAmarillo
2001, pet. denied) (citing Gillespie v. Gillespie, 644 S.W.2d 449, 451
(Tex. 1982)).  This is, in part, because
the trial court is in a better position having Afaced
the parties and their witnesses, observed their demeanor, and had the
opportunity to evaluate the claims made by each parent.@  Coleman v. Coleman, 109 S.W.3d 108,
111 (Tex. App.CAustin
2003, no pet.).  Thus, when the testimony
of witnesses is conflicting, this court will not disturb the credibility
determinations made by the factfinder.  See
id.  A reviewing court=s
holding that a trial court did not abuse its discretion implies that the
evidence contained in the record rebutted the presumption that the standard
possession order was reasonable and in the child=s
best interest.  See Niskar v. Niskar,
136 S.W.3d 749, 756 (Tex. App.CDallas
2004, no pet.).

Dinah
testified that Phillip suffers from depression and that there have been times
when she felt like he was potentially dangerous to himself.  She said that he would lock himself in the
bedroom, that he would break things, and that he would go into fits of rage in
front of the children.  Dinah also said
that if Phillip had a bad day at work, he took it out on their daughter by
whipping her, that he was verbally and physically abusive, and that he played
mind games.  Dinah testified that the
police came to their house in 2004 and made Phillip leave.  Dinah said that Phillip went to strip clubs
and viewed pornography.  He also had a
girlfriend, whom their minor daughter did not like.  Dinah testified that there was a time while
the divorce was pending when Phillip was not regularly washing the girls=
clothes, and the girls were not clean because they had not bathed in three or
four days.  Dinah=s
mother testified that Dinah is a wonderful mother whose daughters love her
dearly.  Moreover, Celia Lowry, who
counseled Dinah from 2004 to 2005, testified that she believed that Dinah was
capable of parenting her children and capable of making rational decisions. 








Phillip
admitted that he has allowed his girlfriend to babysit his daughters while he
went out of town and that he did not allow Dinah to care for their children
during that time.  Phillip said that
Dinah was violent and had pulled the phone out of the wall on one occasion when
he was trying to call for help.  He said
that he had never hit Dinah but admitted that he had called her a Acow@ and
had bitten her on two occasions when he was trying to defend himself because
she had attacked him.  Phillip said that
he took Lexapro from August 2004 to May 2005 because he was very upset and
distraught; he also said that he had locked himself in the bedroom after a fight
with Dinah and that he had destroyed things in the home.  He testified that he was the one who had
called the police in 2004 and that he had left the residence on his own,
leaving the children with Dinah because she had calmed down.  Phillip agreed that Dinah has never been
diagnosed as schizophrenic, delusional, or paranoid; that CPS has never been
called on Dinah; and that there have been no incidents with the police
involving Dinah and the children. 
Phillip testified that he no longer believes that Dinah=s
visits should be supervised but that he is requesting a restricted visitation
schedule.  Phillip admitted that he has
visited strip clubs and looked at pornography and said that Dinah looked at
pornography with him.  Dr. Flynn, who was
appointed by the court to conduct a social study, noted in his report that
Phillip is likely to be seen by others as unusually stable and predictable,
that he displays a high level of tolerance for others=
inconsistencies, and that he is a counterpoint to Dinah=s
mercurial personality. 








In
addition to the above testimony, the trial court also heard live testimony from
Dr. Flynn and Dr. Cook,[4]
both of whom had interviewed Dinah.  Dr.
Flynn testified that Dinah does not have good filters, and therefore her
ability to process stimuli is impaired. 
He said that Dinah=s impaired thinking will
cause her to be unpredictable and erratic and that it will be hard to get her
to think through a problem.  He noted
that several observers had reported that Dinah had unpredictable temper
outbursts.  He, however, did not find any
physical abuse of the girls by Dinah and said that there had been no CPS
referrals.  Dr. Flynn testified that
Dinah is not likely to cause harm to her daughters by any affirmative act and
that he does not believe that she should be required to have supervised
visits.  He opined that there will be
problems if Dinah has the girls for more than one night and that a full
thirty-day summer visit would be Aasking
for trouble.@  He thinks that in a few years, the minor
daughter will be able to decide to go home (to Phillip=s
house) if things go awry while she is visiting Dinah.  He urged the court to find a balance so that Awe
don=t
pay the huge price of supervision and restriction; but, on the other hand, we
don=t
take the unnecessary risk of putting the child in the care of someone .
. . whose conduct is not particularly stable and predictable.@ 








Dr.
Cook testified that he performed an evaluation on Dinah in April 2005.  After conducting two clinical interviews and
administering three standardized psychological tests on Dinah, Dr. Cook saw
nothing out of the ordinary, Anothing
approaching delusional.@  He said that Dinah=s
verbal responses were organized, coherent, logical, and showed no intellectual
disorganization; moreover, all three tests were negative for delusional
thinking and for any kind of psychiatric disorder.  Although Dinah showed subtle paranoid
qualities, they did not rise to the level of abnormal, and her clinical profile
was within normal limits with no indications of any serious psychological problems.  Dr. Cook said that the tests showed that
Dinah is usually a confident, socially outgoing, and reasonably well-adjusted
person.  Dr. Cook said that it is highly
unlikely that Dinah would engage in serious distortions of her social
environment or develop full-blown delusional thinking, so he does not believe
that Dinah should be denied access to her children or be required to have
supervised visitation. 








The
trial court stated in its findings of fact that it found the testimony of Dr.
Flynn to be more credible and more persuasive than the testimony of Dr. Cook
because it was based on more recent interviews (i.e., interviews from 2007 to
2008 as opposed to the interview in April 2005 conducted by Dr. Cook); Dr.
Flynn=s
report was more extensive in that it included interviews with both parties and
the children, whereas Dr. Cook interviewed only Dinah; and Dr. Flynn focused on
what he described as Dinah=s Aimpaired
thinking@ and
explained that her responses to things that affect her are governed very much
by her emotions and not by any kind of a logical rational basis, making her
unpredictable.  In Dr. Flynn=s
testimony, and in the supporting social study and supplemental letter, he
described in detail why the best interest of the children would best be served
by restricting Dinah=s visitation with them.[5]  After the trial court concluded that Dinah=s Aimpairment,@
i.e., her A>unpredictable
temper outbursts[>] []called for less
frequency and less duration in her visits with her children than what would
normally be granted to a parent who did not have such impairment,@ the
trial court followed Dr. Flynn=s
recommendation that Phillip be appointed sole managing conservator of the
children and his recommendation that Dinah=s
visitation with the children be restricted. 
The trial court left open the possibility of Dinah=s
modifying her visitation with the minor child in the future.








Although
the witnesses=
testimonies were contradictory at times, the trial court was in the best
position to judge the witnesses=
credibility.  Moreover, only one of the
psychologistsCDr.
Flynn, who was appointed by the trial court to perform a social studyChad
recently interviewed the parties and the children, and his testimony and report
supported naming Phillip as sole managing conservator and limiting Dinah=s
possession of and access to her child. 
Thus, the record supported the trial court=s
decision to vary from the standard possession order.[6]

Accordingly,
we hold that the trial court did not abuse its discretion by entering a
modified possession and access order that was in the child=s
best interest.  Cf. In re Marriage of
Swim, 291 S.W.3d 500, 507 (Tex. App.CAmarillo
2009, no pet.) (holding that trial court did not abuse its discretion by
restricting father=s possession of and access
to child when record demonstrated that father had drug dependence, type one
bipolar disorder, a history of drug relapses, and past medication cessation); Warnock
v. Warnock, No. 14-94-01049, 1996 WL 606987, at *6B7
(Tex. App.CHouston
[14th Dist.] Oct. 24, 1996, no writ) (not designated for publication) (holding
that record contained ample evidence to support trial court=s
modification order when record revealed that mother suffered from at least moderate
emotional and psychological problems and that clinical psychologist opined that
mother would be less able to meet her children=s
needs).  We therefore overrule Dinah=s
second issue.

V.  Conclusion








Having
overruled Dinah=s two issues, we affirm the
trial court=s
judgment.

 

SUE WALKER

JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

 

DELIVERED:
June 3, 2010











[1]See Tex. R. App. P.
47.4.





[2]Although there were
two minor children at the time the decree of divorce was signed, one of the
children has now attained the age of majority.





[3]Dinah appeals only
the possession and access orders, not the granting of the divorce or the
division of property.





[4]Dinah was referred to
Dr. Cook by her counselor, Patricia Myers, because she wanted Dr. Cook to
assess Dinah for the possibility of a delusional disorder.





[5]Three months after
Dr. Flynn=s original report, he
supplemented it in light of a phone conference with Patricia Myers, who had
been counseling the children for an extended period of time.  Dr. Flynn reported that Myers offered her Astrongly-held@ opinion that Dinah=s periods of
possession with the children should be supervised because her daughters were
frightened of her anger.  Myers stated
that Dinah was not psychologically stable and referenced an earlier
psychological evaluation by Dr. Tom Cook that had used the word Aparanoia@ to describe Dinah
Vasquez=s psychological
functioning.  Dr. Cook, however,
testified at the final trial that although Dinah=s psychological tests
from 2005 showed subtle paranoid qualities, he tried to make clear that he was
not saying that she was paranoid.





[6]To the extent that
Dinah=s second issue may be
liberally construed as challenging the sufficiency of the evidence to support
the trial court=s decision to deviate
from the standard possession order, the evidence in the record is legally and
factually sufficient to support the findings of fact, mentioned above, which
were relied upon by the trial court in concluding that a modified possession
order was appropriate.  See Askew v.
Askew, No. 02-04-00109-CV, 2005 WL 2471539, at *3 (Tex. App.CFort Worth Oct. 6,
2005, no pet.) (mem. op.) (holding that the evidence was legally and factually
sufficient upon which the trial court could exercise its discretion in
appointing father as sole managing conservator).